Jerome JOHNSON, Plaintiff

v.

The DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONAL
SERVICES, Defendant.

Civ. No. S 95–269.

United States District Court,
D. Maryland.

May 4, 1995.

**818**

Jerome Johnson, Jessup, MD, pro se.

Richard Kastendieck, Asst. Atty. Gen., Baltimore, MD, for defendant.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This case is before the Court on a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by the Defendant, the Maryland Department of Public Safety and Correctional Services. The Plaintiff in this action is an inmate at the Maryland Correctional Institution at Jessup (MCIJ), who has challenged the State's "co-pay" policy regarding inmate medical care. Although the legal grounds on which the Plaintiff bases his challenge are unclear, the Court will construe this *pro se* complaint in a liberal manner. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir.1977). *See also Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30

L.Ed.2d 652 (1972); *White v. White*, 886 F.2d 721, 722 (4th Cir.1989).

The Defendant contends that its motion should be granted, whether the Court construes the Plaintiff's claim as challenging the policy under the Eighth or Fourteenth Amendment. Upon review of the Defendant's motion for summary judgment and the Plaintiff's opposition to that motion, the Court agrees that there is no genuine dispute as to any material fact, and that the Defendant is entitled to judgment in its favor as a matter of Law. Fed.R.Civ.P. 56(c). This matter has been adequately briefed, and no oral hearing is necessary. Local Rule 105.6 (D.Md.).

### I. *Factual Background*

In 1994, the Maryland legislature amended article 41, section 4–104 of the Annotated Code of Maryland to authorize prison officials to assess a "reasonable fee not to exceed $4 for each visit by a prisoner to a medical unit...." Md.Ann.Code. art 41, § 4–104. The statute also provides numerous exceptions to this "co-pay" policy. For example, no fees may be assessed for "necessary treatment." *Id.* at § 4–104(i)(2).

The Defendant, along with the Division of Correction (DOC), has implemented the statute in Maryland correctional facilities. Under the new policy, inmates are charged two dollars ($2.00) for certain non-emergency medical services available at the prison facility. The stated purpose of the policy is to reduce abuse of the sick call system, to promote inmate responsibility for their own health, and to allow facility medical resources to be used more efficiently. DOC Information Bulletin No. 23–94, Motion for Summary Judgment (Exhibit 3).

Policy directives issued by both the Defendant agency and the Division of Correction elaborate on the manner in which the new policy is to be implemented. These directives outline broad exceptions to the copay requirement, providing that no inmate will be charged for emergency services, routine health assessments, continuing care visits necessary for follow-up treatments, infirmary care, chronic care or secondary care services (such as hospital care and diagnostic

tests.) Secretary's Directive No. 07–94, Department of Public Safety and Correctional Services, Motion for Summary Judgment (Exhibit 1), at 2; Division of Correction Directive No. 245–8, Motion for Summary Judgment (Exhibit 2), at 2. Both directives also make clear that no inmate will be denied care for lack of funds. Secretary's Directive, at 1; DOC Directive, at 1. This aspect of the policy is featured prominently in the DOC Information Bulletin explaining the new co-pay system. The Bulletin emphasizes that "TREATMENT WILL NOT BE DENIED ANYONE FOR LACK OF FUNDS IN HIS/ HER ACCOUNT," and *"NO ONE WILL BE DENIED SERVICE FOR LACK OF FUNDS,"* (emphasis and capitalization in original). DOC Information Bulletin No. 23–94.

The directives also specify the procedures that officials must follow in applying the co-pay policy. When an inmate initiates a medical visit to which the co-pay requirement applies, the health care provider is required to verify the inmate's identity, record the medical services requested and provided, and obtain the inmate's signature on a "Medical Co-pay Log" form. Secretary's Directive, at 3; DOC Directive, at 2–3, appendix 1, 2. The forms are then sent to the institutional finance department, which determines whether a prisoner has sufficient funds to be eligible for the co-pay and deducts the appropriate amount, if any, from the inmate's personal spending account. *Id.*

The new co-pay policy was instituted at MCI–J in January, 1995. Certain sums have been deducted from the Plaintiff's account pursuant to the new policy; however, the exact amount is unclear.[1] It is undisputed that inmates at MCI–J are paid $26.35 per month, or $.85 per day. The Plaintiff does not allege that he has ever been refused medical treatment as a result of the co-pay policy, but states that he does not have sufficient funds to pay the fees charged. The Plaintiff also does not allege that he has ever

been charged for medical services which he did not request or receive.

## II. *Summary Judgment Standard*

The court will grant summary judgment if there is "no genuine issue as to any material fact...." Fed.R.Civ.P. 56(c). A fact is material only if, when applied to the substantive law, the fact affects the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is genuinely disputed only if, based on that fact, a reasonable jury could find in favor of the non-moving party. *Id.* While the Court may not weigh the evidence, it must determine whether there is a genuine issue for trial. As the Supreme Court stated in *Liberty Lobby,* "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512. Thus, where the record could not support a finding by the trier of fact for the non-movant, there is no genuine issue for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. *Eighth Amendment Prohibition on Cruel and Unusual Punishment*

The Constitution of the United States prohibits cruel and unusual punishment. U.S. Const. amend. VIII. With respect to medical care, this provision requires that the State and its actors refrain from "deliberate indifference to an inmate's serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). The Fourth Circuit has defined actions which constitute deliberate indifference as treatment "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir.1990). *See also Rogers v. Ev-*

---

1. The Plaintiff's complaint alleges that he has been charged a total of $4.00, but in his opposition to summary judgment, he states that $10.00 has been "taken" from him. It is unclear whether the discrepancy is an oversight, or whether the amount has increased since the filing of the complaint. Nevertheless, the exact amount is not material to the Court's analysis of the co-pay policy or the Plaintiff's claim.

*ans,* 792 F.2d 1052, 1058 (11th Cir.1986). Deliberate indifference may be demonstrated by actual intent or reckless disregard. *Miltier,* 896 F.2d at 851. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. *Id.* at 851–52.

■ This Court has no hesitation in concluding that the Defendant's co-pay policy does not represent "intolerable" treatment that "shocks the conscience." The policy is flexible and makes a wide variety of exceptions to avoid imposing unnecessary hardship on seriously or chronically ill prisoners. In light of the numerous exceptions, it appears that the only inmates likely to be subjected repeatedly to the co-pay requirement are those who overuse prison medical services with frequent visits for minor complaints. Moreover, because the policy mandates that no one shall be refused treatment for an inability to pay, the co-pay policy will not result in a denial of care, even for inmates who abuse the system.

This Court is not the first to conclude that co-pay requirements for prison medical services are constitutional. Similar policies have been challenged and upheld under the Eighth Amendment. *See Shapley v. Nevada Bd. of State Prison Comm'rs,* 766 F.2d 404, 408 (9th Cir.1985) (prisoner had alleged no facts sufficient to support allegation that $3.00 fee for medical visits represented deliberate indifference). *Compare Collins v. Romer,* 962 F.2d 1508, 1514 (10th Cir.1992) (affirming district court finding that statute which contained no exceptions whatsoever to copayment requirement would be unconstitutional because it would deprive prisoner of meaningful access to health care).

■ In this case, the Plaintiff seems to allege that, as a result of the co-pay policy, he cannot procure his necessary asthma treatment (an inhaler device). However, there is no indication that the Plaintiff has attempted to secure this treatment and been turned away as a result of the new policy. It appears from the complaint that the Plaintiff is worried about his inability to pay the co-pay fee and thus has not attempted to follow his usual regime. The co-pay policy, however, makes allowances for inmates who have chronic health problems, such as asthma, as well as for those who are unable to pay the fee. Even if the Plaintiff is unable to pay for the medical services he has already received and will need in the future, there is no evidence whatsoever that treatment will be denied to him or that he faces "a substantial risk of danger" as a result of the co-pay policy. *See Miltier,* 896 F.2d at 851.

■ No reasonable jury—and certainly no jury familiar with the costs of the health care system with which the non-inmate population of this country must cope—could find that the Defendant's co-pay policy represents a cruel and unusual punishment in violation of the Eighth Amendment. On the contrary, the flexible policy represents a commendable effort to promote inmate responsibility and the efficient use of scarce medical resources. Even if this Court believed otherwise, however, the Supreme Court has made it clear that the inferior federal courts are not to second-guess the wisdom of prison regulations that do not violate constitutional norms. *Bell v. Wolfish,* 441 U.S. 520, 531, 548, 99 S.Ct. 1861, 1869–70, 1879, 60 L.Ed.2d 447 (1979).

### IV. *Equal Protection Clause of the Fourteenth Amendment*

The Plaintiff alleges generally that the Defendant's co-pay policy is not "fair." This claim conceivably could be construed as alleging a violation of the Equal Protection Clause of the Fourteenth Amendment. The Plaintiff's complaint could be read to allege discrimination in the provision of health care services on the basis of wealth or physical condition. However, in light of policy's exceptions for inmates who are seriously injured, chronically ill or unable to afford the co-pay requirement, such a construction seems excessively strained.

■ Even when generously construed, however, an equal protection challenge to the Defendant's co-pay policy must fail. The Supreme Court has repeatedly made clear that poverty is not a "suspect class," and discriminatory classifications on the basis of wealth receive only rational basis scrutiny.

See, e.g., *Maher v. Roe*, 432 U.S. 464, 471, 97 S.Ct. 2376, 2381, 53 L.Ed.2d 484 (1977) ("[T]his court has never held that financial need alone identifies a suspect class for purposes of equal protection analysis."); *San Antonio Sch. Dist. v. Rodriguez*, 411 U.S. 1, 24, 93 S.Ct. 1278, 1291, 36 L.Ed.2d 16 (1973) ("[A]t least where wealth is involved, the Equal Protection Clause does not require absolute equality or precisely equal advantages."). Moreover, it borders on the inane even to suggest that non-seriously ill inmates, who must pay for minor medical treatments, have any resemblance whatsoever to a suspect class entitled to special protection.

Heightened scrutiny is also inappropriate in this case because there is no "fundamental interest" in medical care for minor conditions such as those which are subject to a co-pay requirement under the policy. *Compare Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (invalidating state poll tax on grounds that voting is a fundamental interest which may not be infringed absent a compelling government interest); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (invalidating durational waiting period for state welfare benefits because it infringed the fundamental right to travel).

Where no suspect class is involved and no fundamental interest is at stake, the allegedly discriminatory policy must bear only "a rational relationship to legitimate state purposes." *San Antonio*, 411 U.S. at 40, 93 S.Ct. at 1300. The Defendant's co-pay policy passes this test with flying colors. The DOC clearly has a legitimate interest in both the efficient use of its prison resources as well as promoting inmates' personal responsibility for their own health. The co-pay policy is well-suited to accomplish this goal. Indeed, the co-pay system is a prominent feature of most health insurance policies for precisely the same reasons that it was adopted in this case—it applies negative reinforcement to the human tendency to overuse those health care services for which someone else is paying—*i.e.*, the moral hazard problem. In sum, because no reasonable jury could conclude that the co-pay policy is not rationally related to a legitimate government interest, there is no equal protection violation in this case.

V. *Due Process Clause of the Fourteenth Amendment*

The Due Process Clause presents a final theory on which the Plaintiff might attack the Defendant's co-pay policy. Plaintiff's filings with this Court could be construed as alleging that $4.00 (or $10.00) was taken from his account, and he was thereby deprived of a property interest without due process of law. For the reasons explained below, however, this argument is unpersuasive.

Prisoners do have a property interest in the funds in their prison account, and the court must determine as a matter of law what process is due before an inmate's account can be docked by prison authorities. *Campbell v. Miller*, 787 F.2d 217, 222 (7th Cir.1986); *Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir.1985). In this case, however, the "process due," if any, is truly minimal. Under the Defendant's co-pay policy, deductions are made from prisoners' accounts quite simply because they have purchased something on their own initiative. *Compare Campbell*, 787 F.2d at 222 (examining more extensive procedures required when prison accounts are frozen as a disciplinary measure); *Quick*, 754 F.2d at 1523 (same).

In this case, the record is undisputed that inmates have been informed about the policy, that the policy requires detailed documentation of eligible medical treatment, and that inmates are required to sign a "Medical Co-pay Log" when services are provided to authorize the charges. *See Scott v. Angelone*, 771 F.Supp. 1064, 1067–68 (D.Nev.1991) (inmate was not denied due process of law when his account was charged for medical visits because he had prior notice of the policy, authorized the charges and was reimbursed for erroneous charges), *aff'd*, 980 F.2d 738 (9th Cir.1992). These procedures pass constitutional muster, and a pre-deprivation hearing is not required. *See id.*

In his opposition to summary judgment, the Plaintiff complains that he has only

signed the co-pay form once, but his account has been charged $10.00. Significantly, the Plaintiff does not allege that he did not receive medical care on the other occasions for which he was charged; he simply did not sign the form. When an inmate refuses to sign the Co-pay Log, the health care provider is authorized to indicate "Refused to Sign" on the form, and the inmate's account might still be debited if he has sufficient funds. Secretary's Directive, at 3. Nevertheless, the prisoner can hardly argue that his own refusal to sign the form acknowledging receipt of the medical benefits he has received amounts to a due process violation.

The Court finds as a matter of law that the Defendant's co-pay policy does not on its face deprive inmates at MCI–J of any protected interest without due process of law and that no reasonable jury could find that the Plaintiff has suffered any such deprivation.

## VI. *Conclusion*

For the reasons stated, the Plaintiff has failed to raise a genuine issue of material fact as to the constitutionality of the Defendant's co-pay policy. Defendant's motion for summary judgment will be *GRANTED*. An appropriate order will be entered separately.

### *ORDER AND JUDGMENT*

For the reasons stated in the foregoing Memorandum Opinion, it is, this 4th day of May, 1995, by the Court, ORDERED and ADJUDGED:

1. That the Defendant's motion for summary judgment BE, and it hereby IS, GRANTED;

2. That judgment BE, and it hereby IS, entered in favor of the Defendant, against the Plaintiff; and

3. That the Clerk of Court mail copies of the foregoing Memorandum Opinion to Plaintiff and to counsel for the Defendant, along with a copy of this Order and Judgment.