Richard R. REYNOLDS, Jr., David Borrell, Reynaldo Felix, Julio Aracho, Robert Santillo, Kurt Mihalski, Luis Santiago–Alvarado, Jesus de Leon, and these Similarly Situated Individuals, Plaintiffs,

v.

Warden George WAGNER, Director of Penna. Institutional Health Services Inc., Carl Hoffman, Jr., Supervisor of Penna. Institutional Health Services and Carol Colburn, Defendants.

Civil Action No. 94–6663.

United States District Court,
E.D. Pennsylvania.

Aug. 13, 1996.

Jules Epstein and Angus R. Love, Philadelphia, PA, for plaintiffs.

Jeffrey R. Elliott, Wyomissing, PA, and Donald E. Wieand, Jr., Allentown, PA, for defendant.

## DECISION AND ORDER

VAN ANTWERPEN, District Judge.

Several inmates at Berks County Prison instituted this class action on November 9, 1994, alleging that the Prison's policy of charging inmates for medical care deprives Berks County Prison inmates of their civil rights. Plaintiffs bring suit under 42 U.S.C. §§ 1983, 1988 and the Eighth Amendment of the United States Constitution. Neither party requested a trial by jury.

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343. Venue is proper under 28 U.S.C. § 1391(b).

## I. BACKGROUND

Plaintiffs instituted the instant action on November 9, 1994, alleging constitutional violations. On January 13, 1995, following a telephonic conference and the agreement of all counsel on the record, we issued an Order consolidating the trial on the merits with the hearing on the preliminary injunction pursuant to Fed.R.Civ.P. 65(a)(2). On February 9, 1995, we granted Plaintiffs' motion for class certification. We certified a class pursuant to Fed.R.Civ.P. 23(b)(2) consisting of all indigent persons who have been, are, or will be incarcerated in Berks County Prison and who have been, are, or will be subjected to the challenged medical services fee policy.

On August 24, 1995, we issued an Order bifurcating liability and damages. On April 25, 1996, we approved a stipulation by counsel to dismiss with prejudice all claims against Defendants Carl A. Hoffman, Jr., and Carol Colburn. Extensive discovery was

taken and forms part of the record before us.[1] On May 8, 1996, we held a one day non-jury trial and we now decide the issues of constitutional liability raised at trial.

We first make the following findings of fact pursuant to Fed.R.Civ.P. 52(a).

## II. FINDINGS OF FACT

1. Plaintiffs Richard R. Reynolds, David Borrell, Robert Santillo, Kurt Mihalski, Jesus DeLeon, and Luis Santiago–Alvarado are all adult individuals currently incarcerated at Berks County Prison. Complaint at ¶¶ 11, 14; Amended Complaint at ¶¶ 2–5; Defendant Wagner's Answer to Complaint (hereafter "Answer to Complaint") at ¶¶ 11, 14; Defendant Wagner's Answer to Amended Complaint (hereafter "Answer to Amended Complaint") at ¶¶ 2–5.[2]

2. Defendant George Wagner is the Warden of Berks County Prison. Complaint at ¶ 7; Answer to Complaint at ¶ 7.

3. Berks County Prison is a governmental entity which detains pre-trial detainees and sentenced prisoners.

4. The average daily population of Berks County Prison is about 775 inmates. Wagner, Tr. 142. Between 100 and 120 are federal inmates are housed under contract with the United States government. Wagner, Dep. p. 24. Federal inmates housed at the Prison are excluded from the fee for service policy at issue in the instant litigation. Wagner, Dep. p. 24. The other approximate 550 inmates are incarcerated at the Prison pursuant to state law. Wagner, Dep. p. 24.

5. Approximately 35% of the inmate population is Hispanic, and approximately 10% of the inmate population speaks only Spanish. Wagner, Dep. p. 17.

6. Berks County Prison established and implemented the medical fee for service policy in July, 1993. Wagner, Dep. p. 9.

7. Although the fee system may generate some limited revenue, the primary purpose of the system is to instill inmate responsibility and discourage abuse of sick call. The primary purpose is not to generate revenue. Wagner, Tr. p. 139; Wagner, Dep. p. 10–11.

8. The persons who developed the fee for service program viewed it as an outgrowth of the direct supervision philosophy adopted for the Berks County Prison. Wagner, Tr. p. 138; Wagner, Dep. p. 8. This direct supervision philosophy stresses giving inmates more choice in their daily lives in an attempt to achieve more responsibility from the inmates in return. Wagner, Dep. p. 6–7.

9. The fee for service program assesses inmates fees for various medical services. These fees are set forth in section 3.6.3 of the Inmate Handbook which provides as follows:

> You will be charged a $3.00 fee for a medical evaluation (sick call) by nursing staff.
>
> There is no charge for prescription medication.
>
> The medical department will maintain a supply of over the counter drugs and issue appropriate quantities to you, if deemed necessary for treatment. Over the counter medication is also available through the commissary and can be purchased at the prevailing commissary rate.
>
> If you are referred to the Doctor by the nursing staff, after initial diagnosis at "sick call", you will not be charged a fee to see the Doctor.
>
> If you are not referred to the doctor after initial screening by the nursing staff, but request to see the doctor anyway, you will be charged a $5.00 fee for this service.

---

**1.** On May 8, 1996, during the one day trial of this matter, the parties stipulated on the record to make the trial depositions of Warden Wagner, Ms. Colburn, Deputy Warden Nichol, Dr. Clark, and Plaintiffs Reynolds, Santillo, Arrogio and Santiago–Alvarado part of the record in this case. Cohen, Tr. p. 80. The Parties also stipulated then and again on July 30, 1996, that the Berks County Prison Inmate Handbook is part of the record before us. *Id.*

**2.** The Complaint and Amended Complaint also allege that the other named Plaintiffs, Reynaldo Felix and Julio Arocho are also currently incarcerated at the Berks County Prison. Complaint at ¶¶ 16, 18. Defendant denied this allegation in his answer. Answer to Complaint at ¶¶ 16, 18. We need not resolve this issue because a resolution is not necessary for us to reach a decision in this matter.

If the doctor determines that you should have been referred at the initial screening, the $5.00 fee will be waived.

10. Section 3.6.4 of the Inmate Handbook sets forth exceptions to the fee for medical service policy as follows:

"Initial commitment medical screening, psychiatric services and emergency services are free.

There is no fee for treatment of chronic illnesses (example: dressing changes, colostomy changes, diabetes, hypertension, or AIDS related syndrome).

Fees for emergencies are determined by the medical department supervisor; some examples are listed below (All accidents do not qualify as emergencies):

A twisted ankle from activities in the recreation yard is not an emergency and is a fee situation.

A cut requiring stitches would qualify as an emergency and does not require a fee. Treatment required as a result of activity in violation of Berks County Prison policy is a fee situation.

You *will never* be refused treatment at any time simply because of a lack of funds.

You are required to sign a "Medical Service Fee" form whenever medical service is rendered. If you refuse to sign the form, the medical staff will initial the form and any necessary fee will be deducted from your account, in any case.

11. Section 3.6.5 of the Inmate Handbook sets forth billing procedures for medical fees as follows:

Medical Department Staff will complete a "Medical Service Fee Form" for all fee services provided.

All fees will be deducted in full from your inmate account. If necessary a negative balance will be maintained. The conditions for collection of monies when negative balances exist are:

Fifty percent (50%) of all incoming funds for your account, regardless of their source, will be credited to your negative account, and the remainder will be credited to your account for personal use. This will continue until all negative balances are satisfied. At discharge *any* available funds from your account will be credited toward your negative balance prior to issuing you a discharge check.

All remaining negative balances after discharge will be maintained on your permanent record. If recommitted, you will be required to pay any negative balance as outlined in the section above.

12. Section 3.6.4 of the Inmate Handbook exempts "chronic illness" from the fee for medical services policy. The Handbook does not further define the term "chronic illness" but rather lists the following examples: "dressing changes, colostomy changes, diabetes, hypertension, or AIDS related syndrome". Inmate Handbook, § 3.6.4. This is the only written definition of the term "chronic illness." Colburn, Dep. p. 16–17.

13. Section 3.6.4 of the Inmate Handbook exempts certain "emergencies" from the fee for medical services policy. The Handbook does not further define the term "emergency" but rather lists the following examples: "A twisted ankle from activities in the recreation yard is not an emergency and is a fee situation. A cut requiring stitches would qualify as an emergency and does not require a fee. Treatment required as a result of activity in violation of Berks County Prison policy is a fee situation." Inmate Handbook, § 3.6.4. This is the only written definition of the term "emergencies." Colburn, Dep. p. 20.

14. Contagious diseases are not exempted from a fee. Clark, Tr. p. 94. The Prison, however, screens all incoming inmates for contagious diseases. Clark, Tr. p. 94.

15. Inmates are not charged for follow-up visits ordered by a physician or nurse and are not charged for legitimate return visits for a condition they have already been treated for. Colburn, Dep. p. 34–35. This practice of not charging for return or follow-up visits is not set out in writing. Colburn, Dep. p. 34–35.

16. Initial screening and psychiatric services are also exempt from the imposition of a fee. Inmate Handbook § 3.6.4.

17. Individual R.N.s or L.P.N.s make the initial determination of whether an individual

inmate at sick call has a chronic illness or emergency, and that R.N. or L.P.N. determines whether the fee is to be assessed to the inmate. Colburn, Dep. p. 16–23. The determination of whether a condition presented at sick call is a chronic illness or an emergency is a "nursing assessment." Colburn, Dep. p. 17–18, 20–21.

18. At the time when a nurse assesses a medical fee, the nurse does not know whether or not the inmate has adequate funds in his or her account to pay the fee. Colburn, Tr. p. 168.

19. The nurse who makes the initial assessment informs the inmate of possible channels to challenge the fee assessment. Colburn, Tr. p. 168–69; Colburn, Dep. p. 26–27.

20. Although the Handbook does not explicitly mention medical fee assessments, an inmate may challenge such assessments under the Handbook's overall generic grievance and communications procedures. Wagner, Dep. p. 31–31; Inmate Handbook §§ 8.1–8.3.

21. An inmate who disagrees with a fee assessment may first file an inmate communication form which will be reviewed by the medical department. Inmate Handbook § 8.1.

22. An inmate who does not receive a favorable response to his communication form may send a written grievance to concerning the fee assessment, subject to certain conditions. Inmate Handbook §§ 8.2, 8.3; Wagner, Tr. p. 144. The Handbook states that "a grievance may not be filed simply because you disagree with a staff member's decision or instructions, unless it meets the above criteria." Inmate Handbook § 8.2. Rather, "a grievance may be filed for any of the following reasons: to report an alleged violation of civil, constitutional or statutory rights; to report an alleged violation of jail policy; to report an alleged criminal or prohibited act by a staff member; or to report an alleged condition existing within the facility that creates unsafe or unsanitary living conditions." Inmate Handbook § 8.2.

3. Deputy Warden Nicol's testimony may conflict with this. Nichol, Dep. p. 27–29, 66–67. Nonetheless, we accept Warden Wagner's reading of the Handbook. Indeed, Plaintiffs Reynolds and

23. Challenging a fee assessment falls under the part of section 8.2 permitting inmates to file written grievances to report alleged violations of jail policy. Wagner, Tr. p. 145. This would qualify as an alleged violation of jail policy because one of the Prison's policies is an inmate financial responsibility program, and this program is outlined in the Prison's standard operating procedures and in the Inmate Handbook. Wagner, Tr. p. 146.[3]

24. The grievance is decided by a majority vote of a committee of senior staff consisting of the Warden, Assistant Warden, the Deputy Warden for Treatment Services, the Deputy Warden for Custody Services and the Director of Administrative Services. Wagner, Tr. p. 145; Wagner, Dep. p. 31–31; Inmate Handbook § 8.3.

25. An inmate may appeal this decision to the Berks County Prison Board. Wagner, Tr. p. 145; Inmate Handbook § 8.3

26. Pursuant to the system, if a prisoner is discharged with a negative account balance, a collection agency is employed to collect any outstanding debt from this negative balance. Wagner, Dep. p. 21.

27. Although each inmate does not receive a personal copy of the Inmate Handbook, each inmate does have access to one. More specifically, a copy of the handbook is placed in each cell during the orientation process and it stays there. There are also several copies of the Handbook available in each housing unit: a copy near the typewriter, a copy in the law library, and copies in every department of the prison. Wagner, Tr. p. 153.

28. During the orientation process, a correctional officer and a counselor review the contents of the Inmate Handbook with the inmates and answer any questions they may have. They also inform the inmates how to address any problems or questions they may have. Wagner, Dep. p. 16.

29. There is no copy of the Inmate Handbook printed in the Spanish language. Wagner, Dep. p. 17–18.

Santillo testified that they were aware that they could grieve fee assessments. Reynolds, Dep. p. 48; Santillo, Dep. p. 35–36.

30. Spanish speaking correctional officers and counselors explain the Handbook to all Spanish speaking inmates during orientation. Wagner, Tr. p. 152–53; Wagner, Dep. p. 17. In addition, there is always a Spanish speaking employee on duty, twenty-four hours a day. Wagner, Tr. p. 153; Wagner, Dep. p. 18. Moreover, the medical department employs at least three nurses who are fluent in Spanish. Colburn, Tr. p. 165–66; Colburn, Dep. p. 29.

31. If an inmate has insufficient funds in his account to pay for a medical fee, then his or her account will register a negative balance, and if the inmate receives additional funds from any source, up to one-half of his funds will be applied towards the negative balance. Inmate Handbook § 3.6.5; Wagner, Dep. p. 20.

32. The Inmate Handbook states "You [i.e. the inmate] *will never* be refused treatment at any time simply because of lack of funds." Inmate Handbook § 3.6.4.

33. Inmates must pay for mailing legal documents to counsel and to the courts. Inmates may purchase postage from the commissary and indigent inmates are eligible to receive three first class postage paid envelopes per week. Wagner, Tr. p. 151; Inmate Handbook § 2.6; Wagner, Dep. p 27.

34. Inmates without sufficient funds in their accounts to pay for postage for legal mail are entitled to have the postage supplied and the mail sent. The cost of the postage will be deducted from the inmate's account and a negative balance will be reflected on the account. Inmate Handbook § 2.7.2 ("If you wish to send legal mail and have no funds, the correspondence will be mailed, however, a negative balance will be applied to your account.").

35. The Inmate Handbook defines "indigent inmates" as follows: "If you are without funds or have received no more than five ($5.00) dollars in a fourteen (14) day period you are eligible to receive certain necessities . . . [including various toiletries, mail supplies . . . and] three (3) free letters per week at the prevailing fee for a first class letter." Inmate Handbook § 2.6; Wagner, Dep. p. 26–27. An indigent inmate's account does not receive a negative balance on account of receiving these items. Wagner, Tr. p. 158. The Handbook further states "If you are indigent you may request up to three (3) (first class) postage paid envelopes by completing a Commissary Request Form." Inmate Handbook § 2.7.2. Finally, the Handbook reiterates "An indigent inmate is one who is without funds or who has not received more than five dollars ($5.00) within a fourteen (14) day period. Such an individual may receive an indigent kit by properly completing a commissary order form and checking the 'Welfare Kit' box on the Commissary Form." Inmate Handbook § 3.1.

36. Inmates have access to a law library at the Prison and supplies of paper, pens, pencils and envelopes are kept there for use by inmates. Wagner, Tr. p. 149–50.

37. Inmates have access to memory typewriters in each housing unit, except the segregation units, and can use these typewriters to make copies of documents. Wagner, Tr. p. 150; Nichols, Dep. p. 7–9. The ribbons on the typewriters are replaced only about every couple of weeks in order to encourage inmates possessing the necessary resources to use the photocopy machine instead. Wagner, Tr. p. 150.

38. Inmates have access to a photocopier and it has cost as much as twenty-five cents per copy to use the machine. Wagner, Dep. p. 25–31; Wagner, Tr. p. 148. The Prison, however, is working on implementing a new system where it will sell the photocopy paper to the inmates at cost with no other fees involved. Wagner, Dep. p. 25–31; Wagner, Tr. p. 148.

39. The National Commission on Correctional Health Care accredited the medical department at Berks County Prison in 1994–1995, at a time when the fee for medical service policy was in effect. Colburn, Tr. p. 165; Colburn, Dep. p. 7; Clark, Tr. p. 90.

40. The National Commission on Correctional Health Care ("NCCHC") issued a position statement in March, 1996, stating that the "NCCHC is opposed to the establishment of a fee-for-service or co-payment program that restricts patient access to care. If a fee-for-service program is to be implemented,

the NCCHC recommends that it be founded on the principle that access to health services will be available to all inmates regardless of their ability to pay." Plaintiffs' Exhibit 1.

41. In this March, 1996 position statement, the NCCHC listed ten guidelines that it thought should be followed in order to insure that access to health care is not blocked. Plaintiffs' Exhibit 1. The respective experts called at trial disagreed as to whether the present Berks County Prison's fee for medical services program meets these guidelines. Cohen, Tr. p. 56–62; Clark, Tr. p. 91–92.

## III. DISCUSSION

Plaintiffs advance three constitutional challenges to the fee for medical services program at the Berks County Prison. They assert, through 42 U.S.C. §§ 1983 and 1988, violations of the Eighth Amendment, the Due Process Clause, and the First Amendment of the United States Constitution.[4] We address each claim separately.

### A. Eighth Amendment Challenge

■ The Eighth Amendment of the United States Constitution provides:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.

U.S. Const. Am. VIII. The Eighth Amendment's prohibition against cruel and unusual punishment requires the state and its officials to provide medical care to sentenced prisoners. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 290–91, 50 L.Ed.2d 251 (1976). To establish an Eighth Amendment violation, the Supreme Court requires a plaintiff to show "deliberate indifference to an inmate's serious medical needs." *Id.* at 106, 97 S.Ct. at 292. Although the government must provide medical care, the Supreme Court has never held the government must pay for it. *See City of Revere v. Massachusetts General Hospital*, 463 U.S. 239,

245, n. 7, 103 S.Ct. 2979, 2984, n. 7, 77 L.Ed.2d 605 (1983) ("Nothing we say here affects any right a hospital or governmental entity may have to recover from a detainee the cost of the medical services provided to him.").

■ As for pre-trial detainees, the Due Process Clause of the Fourteenth Amendment requires the state and its officials to provide medical care to pretrial detainees. *City of Revere*, 463 U.S. at 243–45, 103 S.Ct. at 2983. The Third Circuit requires the provision of medical care to pre-trial detainees similar to that provided for convicted inmates. *Boring v. Kozakiewicz*, 833 F.2d 468, 472 (3d Cir.1987). At a minimum, the deliberate indifference standard pronounced in *Estelle* must be met. *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.1979). Accordingly, we will apply *Estelle*'s deliberate indifference standard to the pre-trial detainee Plaintiffs in this action.

According to the Third Circuit Court of Appeals, deliberate indifference exists in the follow circumstances:

Where prison authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate 'to undue suffering or threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where " 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide care' " the deliberate indifference standard has been met. Short of absolute denial, 'if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out.' Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[ ] in interminable delays and outright denials of medical care to suffering inmates.' Prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious treatment' of the inmate's condition.

---

**4.** If plaintiffs are making claims directly under the Constitution, these claims are deemed stricken because if they do have merit, they can be sufficiently vindicated by an action under 42 U.S.C. § 1983. *Rogin v. Bensalem Tp.*, 616 F.2d 680, 686–687 (3d Cir.1980); *Mahone v. Waddle*,

564 F.2d 1018, 1024 (3d Cir.1977); *Hammond v. Creative Financial Planning Organization*, 800 F.Supp. 1244, 1248 (E.D.Pa.1992); *La Plant v. Frazier*, 564 F.Supp. 1095, 1097–1098 (E.D.Pa. 1983); *DiGiovanni v. City of Philadelphia*, 531 F.Supp. 141, 144 (E.D.Pa.1982).

Nor may they condition provision of needed medical services on the inmate's ability or willingness to pay. Finally, deliberate indifference is demonstrated 'when ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to physician capable of evaluating the need for such treatment.'

*Monmouth County Correctional Institutional Inmates v. Lanzaro,* 834 F.2d 326, 346–47 (3d Cir.1987) (citations omitted), *cert. denied,* 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988). The Third Circuit more recently cited this detailed articulation in *Durmer v. O'Carroll,* 991 F.2d 64, 68 (3d Cir.1993).

■ Under *Estelle* the deliberate indifference must be directed at a serious medical need. A serious medical need is " 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.' " *Lanzaro,* 834 F.2d at 347 (citations omitted). In addition, the "seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment." *Id.*

### 1. Per Se Challenges

Plaintiffs first make two per se challenges to fee for medical services programs.[5] They argue such programs are per se violations of the Eighth Amendment with respect to sentenced prisoners, and the Due Process Clause with respect to pre-trial detainees because the very nature of such programs exhibits deliberate indifference to serious medical needs. Plaintiffs assert that any such program imposes a restrictive barrier to medical care and causes indigent and near-indigent inmates to refrain or delay from

seeking necessary medical treatment. Plaintiffs' Proposed Findings of Fact and Conclusions of Law at p. 21, ¶¶ 1–3. Plaintiffs cite no authority for these assertions.

■ We disagree. Looking to *Lanzaro*'s articulation of the deliberate indifference standard, we find Plaintiffs' allegations insufficient to establish unconstitutionality. We compare Plaintiff's allegations with the unconstitutional act of "prison officials erect[ing] arbitrary and burdensome procedures that 'result[ ] in interminable delays and outright denials of medical care to suffering inmates." *Lanzaro,* 834 F.2d at 346–347. We believe fee for medical services programs do not present these problems. These programs do not necessarily involve "arbitrary and burdensome procedures." Nor do they necessarily result in "interminable delays and outright denials of medical care." Rather, these programs require that inmates with adequate resources pay for a small portion of their medical care, usually with the goal of instilling inmate responsibility. *See* Findings of Fact 7, 8. Accordingly, we reject Plaintiffs' contention that any fee for medical services program is per se unconstitutional.

Our decision is consistent with other courts that have addressed medical co-pay programs at prisons in the context of the Eighth Amendment. *See e.g., Johnson v. Dept. of Public Safety & Corr. Services,* 885 F.Supp. 817 (D.Md.1995) (court granted summary judgment holding that the co-pay program at issue did not violate the Eighth Amendment); *Martin v. DeBruyn,* 880 F.Supp. 610, 615 (N.D.Ind.1995) (same); *Turcios v. Dep't of Corrections,* 1996 WL 193849 (N.D.Cal. April 17, 1996) (court granted motion to dismiss stating that medical co-pay system did not violate Eighth Amendment).

**5.** Plaintiffs have referenced us to their conclusions of law in support of their per se challenge to fee for medical services programs. In their Memorandum of Law, Plaintiffs described the relevant Eighth Amendment case law and then stated "For the reasons set forth below as conclusions of law, the Berks County plan violates indigent inmates' right to adequate medical care either *per se* or as implemented." Plaintiffs' Proposed Findings of Fact and Conclusions of Law at 17. Plaintiffs went no further than this in explaining their cause of action.

Paragraphs two and three of Plaintiffs' Conclusions of Law appear to be solely per se challenges to fees for services programs. In addition, paragraph five states "even if all prison-based fee-for-service medical programs are not unconstitutional per se, the challenged program at the Berks County Prison is unconstitutional ... for the following reasons, individually and/or cumulatively ..." Accordingly, we deem the arguments made in paragraphs two and three of Plaintiffs' conclusions of law as solely per se challenges to fee for medical services programs.

*2. Other Challenges*

Plaintiffs also challenge the Berks County Prison fee for medical services program as violative of the Eighth Amendment with respect to sentenced prisoners, and the Due Process Clause with respect to pre-trial detainees for other reasons. Plaintiffs' Proposed Findings of Fact and Conclusions of Law at p. 22, ¶ 5. Plaintiffs advance seven different arguments and we address each individually.

■ Plaintiffs assert that the "Berks fee program imposes higher fees than those assessed in the statewide Medicaid program for indigent persons, thereby imposing a substantial barrier to health care." Plaintiffs' Proposed Findings of Fact and Conclusions of Law at p. 22, ¶ 5(a). Even if true, this fails to satisfy the deliberate indifference standard explained in *Lanzaro*. The Berks fee program charges $3.00 for nurses visits, $5.00 for doctors visits and if an inmate cannot afford these charges, his account is charged but registers a negative balance. Findings of Fact 9–11. We believe this does not amount to a "substantial barrier to health care", especially since an inmate will never be denied health care solely because he or she can not afford it. Findings of Fact 10, 32. The fact that indigent persons might pay less for health care under the state Medicaid program does not alter our opinion. We assess the program's constitutionality in light of the *Lanzaro* standard, not by comparison to a state medicaid program.

■ Plaintiffs next argue that the Berks County Prison fee program deprives Spanish-speaking inmates access to health care by not providing a written Spanish-language version of the fee-for-service policy. Plaintiffs' Proposed Findings of Fact and Conclusions of Law at p. 22, ¶ 5(b). Plaintiffs are correct that there is no written Spanish-language version of the policy. Finding of Fact 29. Spanish speaking correctional officers and counselors, however, explain the Handbook, which contains a thorough description of the medical fee program, to all Spanish speaking inmates during orientation. Finding of Fact 30. In addition, there is always a Spanish speaking employee on duty, twenty-four hours a day and the medical department employs at least three nurses who are fluent in Spanish. Finding of Fact 30.

We are always concerned with difficulties presented by the language barrier. Yet given the mitigation attempts described above, we see no barrier to health care for Spanish-speaking inmates approaching to the deliberate indifference standard articulated in *Lanzaro*. Having said that, we nonetheless encourage Prison Officials to make available a copy of the Inmate Handbook in the Spanish translation. This should mitigate any lingering difficulties stemming from the language barrier.

Plaintiffs next argue that the fee program does not properly define "chronic illness" and "emergency" thereby causing inmates to forego medical attention. Plaintiffs' Proposed Findings of Fact and Conclusions of Law at p. 22, ¶ 5(c). Plaintiffs also assert that this failure to properly define causes arbitrary deprivation of health care to inmates due to a lack of uniform standards. Plaintiffs' Proposed Findings of Fact and Conclusions of Law at p. 22, ¶ 5(d).

Section 3.6.4 of the Inmate Handbook exempts "chronic illness" from the fee for medical services policy. Instead of further defining the term "chronic illness" the Handbook lists the following examples: "dressing changes, colostomy changes, diabetes, hypertension, or AIDS related syndrome". Finding of Fact 12. This is the only written explanation of a chronic illness. Finding of Fact 12. Section 3.6.4 of the Handbook also exempts certain "emergencies" from the fee for medical services policy. Rather than further defining the term "emergency," the Handbook lists the following examples:

> A twisted ankle from activities in the recreation yard is not an emergency and is a fee situation. A cut requiring stitches would qualify as an emergency and does not require a fee. Treatment required as a result of activity in violation of Berks County Prison policy is a fee situation.

Finding of Fact 13. This is the only written definition of "emergencies." Finding of Fact 13.

■ These explanations of the above exempted services do not cause the fee program to run afoul of the deliberate indifference standard. Admittedly, these definitions only provide guidance for ascertaining the existence of a chronic illness or emergency. They are not exhaustive definitions. Nonetheless, even if this were to lead inmates to forgo medical treatment, we still find no constitutional violation. Inmates know or should know they will never be denied medical care because of inability to pay. Finding of Fact 32. This leaves only inmates who forgo medical care for pecuniary reasons. We will not impute deliberate indifference to a prison stemming from an inmate's choice as to personal resource allocation. Inmates are not being forced to bear unconstitutional conditions, but are rather being forced to make responsible resource allocation decisions. *See Martin v. DeBruyn*, 880 F.Supp. 610, 615 (N.D.Ind.1995) ("If the inmate can afford the medicine but chooses to apply his resources elsewhere, it is the inmate, and not the prison official, who is indifferent to serious medical needs.").

Plaintiffs next argue that the Berks fee program deprives inmates of medical care for serious conditions and causes inmates to forgo medical care by failing to offer free medical care for emergencies that stem from inmate activity violating prison rules and regulations. Plaintiffs' Proposed Findings of Fact and Conclusions of Law at p. 22, ¶ 5(e). As we have described, section 3.6.4 of the Inmate Handbook exempts certain "emergencies" from the fee for medical services policy and rather than further defining the term "emergency," it lists the following examples:

> A twisted ankle from activities in the recreation yard is not an emergency and is a fee situation. A cut requiring stitches would qualify as an emergency and does not require a fee. *Treatment required as a result of activity in violation of Berks County Prison policy is a fee situation.*

Finding of Fact 10 (emphasis added).

■ Again, we find no constitutional violation. Forcing inmates to pay for care to address injuries stemming from violations of prison rules does not approach deliberate indifference as described in *Lanzaro*. This conclusion is bolstered by the fact that if a prisoner violates a prison rule and needs medical care but can not afford it, he will receive free medical care. Indeed, while this exception's effectiveness is not determinable, we approve the message that the Prison will not pay the medical costs stemming from illegal prison activity, unless absolutely necessary.

Plaintiffs next Eighth Amendment challenge asserts that by not providing free medical care for contagious diseases the Berks fee program deprives inmates of necessary medical attention. Plaintiffs' Proposed Findings of Fact and Conclusions of Law at p. 22, ¶ 5(f). Again, consistent with the rest of our decision, we find no constitutional violation. Forcing inmates to pay for part of their medical care does not run afoul of the deliberate indifference standard. We are only concerned that inmates without the fiscal resources receive necessary medical care. Accordingly we fail to find that charging inmates for medical addressing contagious diseases violates the deliberate indifference standard.

■ Plaintiffs lastly argue that attaching a negative balance to an inmate's account when that inmate cannot afford medical care coupled with the policy of seeking to recover any unpaid debts after an inmate's discharge discourages inmates from seeking necessary medical care. Plaintiffs' Proposed Findings of Fact and Conclusions of Law at p. 22, ¶ 5(g). Even if Plaintiffs' deduction is correct, we still find no violation of the deliberate indifference standard detailed in *Lanzaro*. The fee program provides presumably adequate medical care [6] at a nominal cost and ensures that no inmate goes without medical care for fiscal reasons. Just as Plaintiffs state that the program discourages the seeking of medical care, we can just as easily state in the alternative that the program forces inmates to make responsible decisions. If this results in inmates seeking medical care less frequently, it is by their own volition. We refuse to impute deliberate indif-

---

**6.** The quality of medical care actually provided is not at issue in the instant litigation.

ference to the prison merely because some inmates might make irresponsible choices. In fact, we recognize the prison's effort to instill reasonable decision-making powers in the inmates as laudable. *See Johnson v. Dept. of Public Safety & Corr. Services,* 885 F.Supp. 817, 820 (D.Md.1995) ("the flexible [co-pay] policy represents a commendable effort to promote inmate responsibility and the efficient use of scarce medical resources").

Having addressed and rejected each of Plaintiffs' seven arguments individually, we also reject Plaintiffs' contention that the total of those seven arguments cumulatively violates the Eighth and Fourteenth Amendments. *See* Plaintiffs' Proposed Findings of Fact and Conclusions of Law at p. 22, ¶ 5. We fail to see a cumulative or even synergistic effect that might approach deliberate indifference.

Plaintiffs also argue that the failure of the Berks County Prison authorities to take remedial action since the initiation of the instant litigation establishes deliberate indifference to a serious medical condition violative of the Eighth and Fourteenth Amendments. Plaintiffs' Proposed Findings of Fact and Conclusions of Law at 21–22, ¶ 4. Given our finding of no deliberate indifference, we need not address this argument.

### B. Due Process Challenge

Plaintiffs maintain that the Berks County Prison fee for medical services program violates the Fourteenth Amendment's Due Process Clause by taking funds held in inmate accounts without due process of law. Plaintiffs' Proposed Findings of Fact and Conclusions of Law at 18–21; 23–24, ¶ 7.

Under the Fourteenth Amendment, the state shall not "deprive any person of life, liberty or property without due process of law." U.S. Const. Amend. XIV. Money in an inmate's account is a protected property interest. *Campbell v. Miller,* 787 F.2d 217, 222 (7th Cir.), *cert. denied,* 479 U.S. 1019, 107 S.Ct. 673, 93 L.Ed.2d 724 (1986); *Quick v. Jones,* 754 F.2d 1521, 1523 (9th Cir.1984); *Jones v. Clark,* 607 F.Supp. 251, 255 (E.D.Pa. 1984). Accordingly, we must decide what process is due as "due process is flexible and

calls for such procedural protection as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

Plaintiffs advance four interrelated arguments as follows: 1. there is no meaningful process for an aggrieved inmate to challenge the medical department's charging of an inmate's account; 2. the inmate grievance procedure does not permit grievances for individual disputed fee assessments; 3. the sole recourse is to file an inmate communication form which is often reviewed by the same person who made the assessment; and 4. inmates may not be aware of the right to use an inmate communication form to challenge disputed fee assessments and there is no published description of procedures for challenging disputed fees. Plaintiffs' Proposed Findings of Fact and Conclusions of Law at p. 23, ¶ 7(a)-(d).

Procedures for challenging fee assessments at the Berks County Prison are as follows. The nurse who imposes a fee informs the inmate of possible channels to challenge the fee assessment. Finding of Fact 19. Pursuant to the Inmate Handbook, an inmate may challenge a medical fee assessed to him. Finding of Fact 20; Inmate Handbook § 8.1. An aggrieved inmate may first file an inmate communication form which the medical department reviews. Finding of Fact 21; Inmate Handbook § 8.1. Upon receiving an unfavorable response to a communication, an inmate may send a written grievance to senior staff concerning the fee assessment, subject to certain conditions. Finding of Fact 22; Inmate Handbook §§ 8.2, 8.3.

The Handbook states that "a grievance may not be filed simply because you disagree with a staff member's decision or instructions, unless it meets the above criteria." Inmate Handbook § 8.2; Finding of Fact 22. Rather,

> a grievance may be filed for any of the following reasons: to report an alleged violation of civil, constitutional or statutory rights; to report an alleged violation of jail policy; to report an alleged criminal or prohibited act by a staff member; or to report an alleged condition existing within

the facility that creates unsafe or unsanitary living conditions.

Inmate Handbook § 8.2; Finding of Fact 22. According to Warden Wagner, challenging a fee assessment falls under the part of section 8.2 permitting inmates to file written grievances to report alleged violations of jail policy. Finding of Fact 23. Warden Wagner claims improper assessments constitute an alleged violation of jail policy because one of the Prison's policies is an inmate financial responsibility program, and this program is outlined in the Prison's standard operating procedures and in the Inmate Handbook. Finding of Fact 23.

The grievance is decided by a majority vote of a committee of senior staff consisting of the Warden, Assistant Warden, the Deputy Warden for Treatment Services, the Deputy Warden for Custody Services and the Director of Administrative Services. Finding of Fact 24; Inmate Handbook § 8.3. An inmate may appeal this decision to the Berks County Prison Board. Finding of Fact 25; Inmate Handbook § 8.3.

▆ The above described procedures refute Plaintiffs' accusations in their conclusions of law. *See* Plaintiffs' Proposed Findings of Fact and Conclusions of Law at p. 23, ¶ 7(b)-(d). Inmates may challenge individual fee assessments and filing inmate communications is not the only available recourse. Inmates either are or should be aware of the right to use inmate communication forms and the Inmate Handbook contains a printed description of procedures for challenging disputed fees.

We do have one reservation. As explained in Finding of Fact 20, the Handbook does not specifically mention medical fee assessments in the sections governing inmate communications and grievances. Rather, challenges to medical fee assessments are presumed to fall under these generic sections. Warden Wagner testified that medical such challenges do in fact fall under these generic sections. While we do not believe this lack of specificity poses a constitutional violation, we encourage the Prison Officials to expressly state in the Handbook that medical fees may be grieved under these sections.

▆ In all other respects, we find these procedures provide meaningful channels for aggrieved inmates thereby passing constitutional muster. Admittedly, there is no pre-deprivation remedy. Such a remedy, however, is not always necessary every time a loss occurs stemming from an established governmental policy. *See Shabazz v. Odum,* 591 F.Supp. 1513, 1517 (M.D.Pa.1984). As noted by the Supreme Court:

> These cases recognize that either the necessity of quick action or the impracticability of providing any meaningful predeprivation process can, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, satisfy the requirements of procedural due process.

*Parratt v. Taylor,* 451 U.S. 527, 539, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981).

▆ In fact any process due in the situation at issue is minimal given that a "taking" of property is not involved in the normal sense of the word. Inmate accounts are debited because inmates are purchasing something—medical care—own their own volition. This is different than situations where inmate accounts are involuntarily debited despite the fact that nothing has been purchased. *See e.g., Campbell,* 787 F.2d at 222 (more extensive procedures required where inmate accounts are frozen as a disciplinary measure). Accordingly, given that under the Berks fee program inmates are informed about the fee policy and adequate procedures exist to challenge disputed fees, we conclude due process has been satisfied.

Our conclusion is consistent with other courts that have examined due process allegations in the context of medical co-pay programs at prisons. *See e.g., Johnson,* 885 F.Supp. at 821 (no due process violation because inmates had been informed about the policy, policy required detailed documentation of eligible medical treatment, and inmates were required to sign a "co-pay log" to authorize charges); *Scott v. Angelone,* 771 F.Supp. 1064, 1067–68 (D.Nev.1991) (no due process violation where inmate had prior notice of the policy, authorized the charges,

and was reimbursed for mistaken charges), *aff'd* 980 F.2d 738 (9th Cir.1992).

██ Even if Plaintiffs were not afforded adequate due process, we still find no constitutional violation. According to the Third Circuit, "inmates' constitutional rights may be impinged by a prison regulation if it is reasonably related to legitimate penological interests." *James v. Quinlan,* 866 F.2d 627, 630 (3d Cir.), *cert. denied,* 493 U.S. 870, 110 S.Ct. 197, 107 L.Ed.2d 151 (1989) (citing *Turner v. Safley,* 482 U.S. 78, 87–91, 107 S.Ct. 2254, 2261–62, 96 L.Ed.2d 64 (1987)). The Third Circuit reasoned that:

> The Inmate Financial Responsibility Program would appear to be related to a legitimate penological interest in encouraging inmates to rehabilitate themselves by developing a sense of financial responsibility. Therefore, even if plaintiffs had established a the existence of a constitutional right in their Federal Prison Industries job assignments, it would not be violated by the Inmate Financial Responsibility Program.

*James,* 866 F.2d at 630.

██ This is analogous to the facts in the instant litigation. The fee for medical services program at Berks County Prison was implemented to encourage inmate responsibility and discourage abuse of sick call. Findings of Fact 7, 8. This is a legitimate penological interest. Accordingly, even if the grievance procedures violated the Plaintiffs' constitutional rights, we still fail to find constitutional liability.

Plaintiffs assert a separate due process violation arguing the lack of specificity in the fee policy, especially the failure to properly define exempt services, results in arbitrary and capricious application of the program. Plaintiffs' Proposed Findings of Fact and Conclusions of Law at 20–21; 24, ¶ 8. Plaintiffs further maintain that the lack of a spanish translation of the Handbook, the lack of Spanish-speaking intake workers, and the lack of intake worker training also contribute to arbitrary application. *Id.* at 20.

We disagree. We found earlier that the fee program does not suffer from a lack of specificity with respect to exempt services

and that adequate efforts have been made to mitigate difficulties stemming from the language barrier. *See supra* at 18.

We also find sufficient specificity with respect to the other provisions of the fee program. The standard for assessing vagueness is as follows:

> The Supreme Court has recognized that a noncriminal statute is unconstitutionally vague under the due process clause of the Fifth or Fourteenth Amendments when its language does not convey sufficiently definite warning as to the proscribed conduct when measured by common understanding or practice. A noncriminal statute is not unconstitutionally vague, however, where its terms are such that the ordinary person exercising common sense can sufficiently understand and fulfill its prescriptions. A finding of vagueness will thus result only where the "exaction of obedience as to a rule or standard ... was so vague and indefinite as really to be no rule or standard at all ...", or where the statute is written in such terms that "men of common intelligence must necessarily guess at its meaning and differ as to its application ..."

*Horn v. Burns and Roe,* 536 F.2d 251, 254 (8th Cir.1976) (citations omitted). The fee for services program at Berks County Prison meets this standard. The Inmate Handbook spells out the fee for medical services program in a level of detail sufficient to pass constitutional muster. *See* Findings of Fact 9–16. A person exercising common sense and ordinary understanding should not have problems understanding the program. We need not reiterate the specific details here as earlier parts of this decision describe the fee program in detail.

Plaintiffs additionally assert that a review of several fee assessments against four named Plaintiffs highlights the arbitrary application that results from the vagueness of the Berks fee program. Plaintiffs' Proposed Findings of Fact and Conclusions of Law at 20. Given our finding that the program is not vague, however, we need not evaluate these particular examples because Plaintiffs' argument is predicated on a finding of vagueness. In addition, we note our doubts as to

the statistical relevance of fee assessments against four named plaintiffs in light of an average daily population at the Prison of about 775 inmates. Finding of Fact 4. In fact, Plaintiffs cite no legal authority in claiming we should draw a direct correlation between treatment of four Plaintiffs and application of the fee program to the rest of the prison population in assessing a due process violation.

### C. First Amendment Challenge

Plaintiffs maintain that the policy of the Berks County Prison requiring indigent and near indigent inmates to pay for their own legal material photocopying creates a financial impediment to health care that causes inmates to choose between access to necessary care and access to the courts in violation of their First Amendment right of access to the courts. Plaintiff's Proposed Findings of Fact and Conclusions of Law at pp. 17–18, 23.

 At the outset, we note that for First Amendment challenges of prison resources, "each legal resource package must be evaluated as a whole on a case-by-case basis." *Abdul–Akbar v. Watson,* 4 F.3d 195, 203 (3d Cir.1993) (citing *Bounds v. Smith,* 430 U.S. 817, 832, 97 S.Ct. 1491, 1500, 52 L.Ed.2d 72 (1977)). The Supreme Court has held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds,* 430 U.S. at 828, 97 S.Ct. at 1498. That holding has led courts to examine what constitutes "adequate" in this context. *See Abdul–Akbar,* 4 F.3d at 202. The Third Circuit has concluded:

> As we can best determine, the standard to be applied is whether the legal resources available to a prisoner will enable him to identify the legal issues he desires to present to the relevant authorities, including the courts, and to make his communications with and presentations to those authorities understood.

*Id.,* at 203. We do not believe that Plaintiffs' First Amendment claim amounts to a violation of this standard.

 Plaintiffs assert that their lack of free photocopying infringes their access to the courts. We agree with other courts that "A prisoner's right of access to the court does not include the right of free unlimited access to a photocopying machine, particularly when [ ] there are suitable alternatives." *Harrell v. Keohane,* 621 F.2d 1059, 1061 (10th Cir.1980). *See also Thomas v. Olander,* 877 F.Supp. 242, 243 (E.D.Pa.1995). We now examine whether alternatives available to the inmates are constitutionally "adequate" or "suitable."

Plaintiffs assert that inmates receive an "indigent bag" (entitling them to paper, pens, three first-class stamps with envelopes and no copying privileges) only *after* a fourteen day period in which the inmate's account has a balance of less than five dollars. Plaintiff's Proposed Findings of Fact and Conclusions of Law at p. 17. Were inmates unable to post letters pending the duration of a two-week period establishing their indigence, we might be concerned. *See Gluth v. Kangas,* 951 F.2d 1504, 1508 (9th Cir.1991) (policy which forces inmates to choose between purchasing hygienic supplies and essential legal supplies, is "unacceptable").

Nonetheless, we do not believe that such a devil's choice has been established. First of all, the Inmate Handbook states "If you wish to send legal mail and have no funds, the correspondence will be mailed, however, a negative balance will be applied to your account." Inmate Handbook § 2.7.2; Finding of Fact 34.

In addition, the plain language of the Prison Handbook defines "Indigent Inmates" by stating in section 2.6 "If you *are without funds or* have received no more than five ($5.00) dollars in a fourteen (14) day period you are eligible to receive certain necessities." Finding of Fact 35 (emphasis added). Moreover, section 2.7.2 of the Handbook states "If you are indigent you may request up to three (3) (first class) postage paid envelopes by completing a Commissary Request Form." Finding of Fact 35. Finally, section 3.1 of the Handbook reiterates "An indigent inmate is one who *is without funds or* who has not received more than five dol-

lars ($5.00) within a fourteen (14) day period. Such an individual may receive an indigent kit by properly completing a commissary order form and checking the 'Welfare Kit' box on the Commissary Form." Finding of Fact 35 (emphasis added).

It is evident that prisoners' are not being forced to choose between taking their case to court and adequate health care. Berks County Prison policy guarantees legal mail will be sent and allows an inmate without sufficient funds a small supply of personal hygiene items, mail supplies and a pencil, and three first class letters per week at the prevailing fee for a first class letter. Berks County Prison Inmate Handbook § 2.6.

We believe that such materials, supplemented by those available in the Prison's law library (Finding of Fact 36), are sufficient to allow an inmate to "identify the legal issues he desires to present to the relevant authorities, including the courts." *Abdul–Akbar*, supra, at 203. Similarly, we believe that the prison policy suitably assists inmates "in the preparation and filing of meaningful legal papers" to pass constitutional muster. *Bounds*, supra, 430 U.S. at 828, 97 S.Ct. at 1498. We conclude that Plaintiffs have not established that the policy of the Berks County Prison in charging for photocopying, coupled with charges for medical visits, amounts to a violation of the First Amendment.

## IV. CONCLUSIONS OF LAW

Consistent with the foregoing findings of fact and discussion, we reach the following conclusions of law pursuant to Fed.R.Civ.P. 52(a):

1. Fee for Medical Services programs do not per se violate the Eighth and Fourteenth Amendments of the United States Constitution for sentenced prisoners and pre-trial detainees, respectively.

2. The Berks County Prison's fee for medical services program does not violate the Eighth and Fourteenth Amendments of the United States Constitution for sentenced prisoners and pre-trial detainees, respectively.

3. The Berks County Prison's fee for medical services program does not violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

4. The Berks County Prison's fee for medical services program does not violate the First Amendment of the United States Constitution.

An appropriate order follows.

### ORDER

AND NOW, this 13th day of August, 1996, in this non-jury matter, after consideration of Plaintiffs' Proposed Findings of Fact and Conclusions of Law, filed June 12, 1996, Defendant Warden George Wagner's Proposed Findings of Fact and Conclusions of Law, filed June 24, 1996, and Plaintiffs' Reply to Defendant's Proposed Findings of Fact and Conclusions of Law, filed July 1, 1996, it is hereby ORDERED consistent with our foregoing findings of fact, conclusions of law, and discussion, as follows:

1. **JUDGMENT IS ENTERED IN FAVOR OF DEFENDANT WARDEN GEORGE WAGNER AND AGAINST ALL PLAINTIFFS AND ALL INDIGENT PERSONS WHO HAVE BEEN, ARE, OR WILL BE SUBJECTED TO THE CHALLENGED MEDICAL SERVICES FEE POLICY OF DEFENDANTS.**

2. Notice of this decision and order shall be given by plaintiffs' counsel directly to all named Plaintiffs and by immediately posting a copy of this decision and order in a place generally accessible to inmates in the Berks County Prison for not less than fourteen (14) days. Defendant Warden George Wagner shall permit and assist with such posting.

3. The judgment entered by this Order will become final and appealable if no motions for reconsideration are filed within thirty (30) days of the date of this Order. At such time, this case will be deemed closed for administrative purposes.