Guy RICHMOND, # 191593

v.

Donna STIGILE, et al.

No. Civ.A. WMN–98–417.

United States District Court,
D. Maryland.

Sept. 18, 1998.

Guy Richmond, pro se.

J. Joseph Curran, Jr., Attorney General of Maryland, and Stephanie Lane–Weber, Assistant Attorney General of Baltimore, MD for Defendants.

### MEMORANDUM

NICKERSON, District Judge.

Plaintiff, an inmate incarcerated at the Western Correctional Institution ("WCI"), filed the instant complaint under 42 U.S.C. § 1983. He asserts a challenge to the correctness of deductions made from his account pursuant to the Prison Litigation Reform Act ("PLRA"). (Paper No. 1) Mr. Richmond contends that prison officials responsible for making the filing fee deductions have taken money from his account in excess of that authorized by the PLRA which, at least in one instance, caused the amount of funds in his prison account to be reduced to less than $10.00 thereby leaving him without funds to purchase essential hygiene articles. (*Id.*) Plaintiff further complains that defendants' actions have exacerbated his hypertension. (*Id.*) He seeks $3.5 million in damages, reimbursement for the excess funds withdrawn from his account including an interest payment at the rate of $500.00 for every dollar of excess funds removed, and an order withdrawing imposition of the filing fee imposed in this matter. (*Id.*) Defendants have submitted a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment which is currently pending before the Court. (Paper No. 23) Plaintiff has submitted a response in opposition thereto. (Paper No. 25) The case is now ready for the Court's consideration. No hearing is deemed necessary. *See* Local Rule 105.6 (D.Md.).

Effective April 26, 1996, the PLRA significantly changed procedures in prisoner litigation brought without prepayment of the filing fee. Some critical changes in the new law affecting prisoner actions include the following:

1. The PLRA obligates full payment of the filing fee by all inmates. The court must assess an initial partial filing fee on all inmates who are permitted to proceed *in forma pauperis* ("IFP"). 28 U.S.C. § 1915(b)(1).

2. To assist the court in assessing the appropriate fee, a prisoner seeking IFP status must file an affidavit showing his assets and attesting to his impoverishment, and submit a certified copy of his account statement for the six-month period preceding the filing of the complaint or notice of appeal. 28 U.S.C. § 1915(a)(1) & (2).

3. The amount of the initial partial filing fee shall be twenty percent of the greater of:

(A) the average monthly deposits in the prisoner's account; or

(B) the average monthly balance in the prisoner's account for the 6–month period immediately preceding the filing of the complaint or notice of appeal. *See* 28 U.S.C. § 1915(b)(1).

4. The court will authorize prison officials to deduct the initial filing fee directly from plaintiff's trust fund account. Thereafter, correctional authorities having custody of plaintiff will have authority to make monthly payments to the court of 20 percent of the preceding month's income credited to plaintiff's trust fund account each time the amount in the account exceeds $10.00 until such time as the full filing fee is paid. 28 U.S.C. § 1915(b)(2).

5. "In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the

reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." 28 U.S.C. § 1915(b)(4).

█ It is the court and not the prison officials that assess the filing fee. 28 U.S.C. § 1915(b)(1) & (b)(2). Further, as reflected above, the PLRA sets forth the percentage of the money in the prisoner's account that may be taken for the payment of the filing fee. *Id.* The prison officials, or other agency having custody of the prisoner, merely perform the administrative function of deducting the fee from the prisoners' accounts and forwarding that fee to the clerk of court "each time the amount in the account exceeds $10.00 until the filing fees are paid." § 1915(b)(2). The government's interest in the fee system includes reducing frivolous prisoner filings by requiring the prisoner to weigh, as other litigants must, the economic cost of filing suit. *See Roller v. Gunn*, 107 F.3d 227 (4th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 192, 139 L.Ed.2d 130 (1997) ("the right of access to federal courts is not a free-floating right, but rather is subject to Congress' Article III power to set limits on federal jurisdiction.").

The Court garners from plaintiff's complaint that he takes issue with three payments made to the Court in accordance with the PLRA. (Paper No. 1) Specifically, Mr. Richmond challenges an initial partial filing fee of $9.59 deducted on July 21, 1997, which was made in connection with his appeal of Civil Action No. WMN–96–3464, and federal filing fee installment payments of $7.57 made on August 22, 1997 and $8.83 made on September 26, 1997. (*Id.*, *see also* Paper No. 23 at Exh A–17–18)

Defendants submit that the amounts deducted from plaintiff's account have been made either in accordance with a court order or made pursuant to a computerized formula based upon the dictates of the PLRA and the funds available in Mr. Richmond's inmate account. (Paper No. 23 at Exh A–20–30, 33, 44–46, 47, 48) Defendants further maintain that inmates who cannot afford basic hygiene

articles may obtain them through the welfare commissary. (*Id.* at Exh. B)

█ Undoubtedly, the PLRA has caused numerous administrative headaches for prison officials and court personnel alike in their efforts to comply with the Act's filing fee provisions. From the record before it, the undersigned deduces no intentional effort by prison officials to incorrectly calculate inmate filing fees due and owing to this Court. Rather, it appears that plaintiff's allegation that improper deductions have been or are being made from his inmate account, stems from his misunderstanding of exactly how the filing fee deductions must be made according to the PLRA's statutory provisions. Specifically, the undersigned finds that the initial partial filing assessed to Mr. Richmond on July 21, 1997, was made correctly as required under 28 U.S.C. § 1915(b)(1). (Paper No. 23 at Exh. A–4) Specifically, the documents filed in support of defendants' dispositive motion reflects that Mr. Richmond's six-months average account balance based on the six months preceding the filing of the appeal ($47.99) was greater than the six-months average deposits to his account during this same time period ($40.25). (*Id.*) Prison officials, thus, correctly forwarded to the Clerk of this Court $9.59 (20% × $47.99 = $9.59). Furthermore, there is no provision in § 1915(b)(1) that prison officials may only deduct the initial partial filing fee when the amount in an inmate's account exceeds $10.00 or that the amount may only be deducted if the deduction does not cause the amount of funds in the inmate's account to go below $10.00.

The other two amounts about which Mr. Richmond complains ($7.57 and $8.83) were designated as payments for "federal filing fees," and thus, subject to the provisions of § 1915(b)(2) which requires that monthly payments of 20 percent of the preceding month's income credited to the prisoner's account after payment of the initial partial filing fee be made.[1] The agency having cus-

---

1. The documents before the Court reflect that plaintiff was responsible for payment of at least two Court-ordered filing fees; $105.00 for his appeal in Civil Action No, WMN–96–3464 and the $150 filing fee for instituting the instant complaint. Consequently, prison officials are responsible for deducting at this time a total of $250.00 from Mr. Richmond's account and for-

tody of the prisoner shall then forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10.00 until the filing fees are paid. (*Id.*) Although the statute requires that a prisoner's account exceed $10.00 before any installment amounts may be deducted, it does not state that funds may not be deducted if the deduction would cause the prisoner's account balance to go below $10.00. (*Id.*) Furthermore, the calculation is not based on 20 percent of the balance in the inmate's account at the time of the deduction but rather, is based on the *total* amount of deposits an inmate received during the preceding month.

With the foregoing in mind, the Court concludes that prison officials at WCI correctly computed the installment deductions from plaintiff's account. The documents contained in the Court file reflect that the deduction of $8.83 made in September of 1997 represented 20 percent of the preceding month's income to plaintiff's account which consisted of deposits in the amount of $19 .55 on August 1, 1997, $20.00 on August 19, 1997, and $4.60 on August 19, 1997 (20% × $44.15 = $8.83). (Paper No. 23 at Exh. A–17–18)

Plaintiff's account balance at the time the deduction was made on September 26, 1997, was $45.00 with $20.00 of this amount contained in his active account balance.[2] (*Id.*) It is further affirmatively reflected in the documents before the Court that the deduction of $7.57 made on August 22, 1997, represented 20 percent of the preceding month's deposits to Mr. Richmond's account which consisted of $17.85 on July 8, 1997, and $20.00 on July 16, 1998 (20% × $37.85 = $7.57). (*Id.*) When the installment deduction was made, plaintiff had $38.03 in his prison account of which $13.03 was in his active account balance.

■ The extractions made from Mr. Richmond's prison account about which he complains were the appropriate percentages as dictated by the PLRA and were otherwise made in accordance with the provisions contained therein. 28 U.S.C. § 1915(b)(1) & (b)(2). Consequently, the Court finds that plaintiff's due process rights have not been infringed and defendants are, therefore, entitled to summary judgment on this claim.[3]

■ Plaintiff complains that deductions from his account for filing fees left him with little to no money to purchase basic hygiene

warding such payments to the Clerk of this Court. (*See* Paper No. 23 at Exh. A–33, A–44)

2. A reserve balance of $25.00 is maintained in inmate prison accounts which is distributed to them upon their release from prison.

3. Although no due process violation has been established in the instant action, the undersigned notes that an inmate does have a protected property interest in his prison account. *See Johnson v. Dep't. of Public Safety and Corr. Svces.*, 885 F.Supp. 817, 821 (D.Md.1995). Once a protected property interest is found, a court has a duty as a matter of law to determine what process is due before an inmate's account can be docked by prison authorities. *Id.* The Supreme Court has held that the Constitution requires a hearing of some type before the state deprives a person of liberty or property. *See e.g., Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The Court has also held, however, that under some circumstances, a statutory provision for a post-deprivation hearing or common law tort remedy for erroneous deprivation satisfies due process. *See Parratt v. Taylor*, 451 U.S. 527, 536, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part by, Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (property loss result-

ing from the random, unauthorized negligence of state employees rather than from some established state procedure does not implicate a violation of the Due Process Clause where the state satisfies due process by making available to prisoners an adequate post-deprivation remedy under the state's tort claim procedure). With this understanding of the law in relation to the matter before this Court, the undersigned notes that even if prison officials had not complied properly with the PLRA provisions in deducting funds from Mr. Richmond's account, in order to prevail on his due process claim, plaintiff would have to demonstrate that the deprivation occurred as a result of an established state procedure and not from an unauthorized failure of state agents to follow established state procedure. Given the PLRA' newness and the difficulties both court and prison personnel have experienced in administering properly its provisions, the undersigned concludes that, at this juncture, such a showing would likely be insurmountable absent a clear showing of an intentional effort at non-compliance. As noted by the *Daniels* Court, the term "deprive," as employed in the Fourteenth Amendment, suggests more than a mere failure to take reasonable care: it connotes an intentional or deliberate denial of life, liberty, or property. *Daniels*, 474 U.S. at 330, 106 S.Ct. 662.

articles. Plaintiff disputes defendants' assertion that if he had no funds he was eligible for the welfare commissary. (Paper No. 25) Mr. Richmond contends that if an inmate has any money sent to him during the month he becomes ineligible to receive welfare commissary. (*Id* .) Taking as true plaintiff's assertion that the receipt of any funds in a month may render an inmate ineligible to receive welfare commissary, the Court finds that he is entitled to no relief.[4] Even assuming, *arguendo*, that Mr. Richmond had named the proper defendant to this Eighth Amendment claim, in order to violate the Constitution, deprivations must be "unquestioned and serious" and contrary to "the minimal civilized measure of life's necessities." *See Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Mere discomfort and inconvenience do not implicate the Constitution. *Id.* Although the availability of basic hygiene items may be considered a minimal necessity, the Eighth Amendment is only violated when the deprivation of these items is sufficiently serious or lengthy and the prison officials have acted with deliberate indifference. *See Wilson v. Seiter*, 501 U.S. 294, 298, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Moreover, conditions which do not result in physical harm are not actionable under the Eighth Amendment. *See Strickler v. Waters*, 989 F.2d 1375, 1380–81 (4th Cir.), *cert. denied*, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993); *see also Sweet v. South Carolina Dep't of Corrections*, 529 F.2d 854 (4th Cir.1975). Because plaintiff's claim fails to rise to the level of an Eighth Amendment deprivation, defendants' dispositive motion on this allegation shall be granted.

In light of the foregoing, the undersigned finds that defendants are entitled to summary judgment and judgment shall be entered in their favor and against plaintiff by separate Order.

---

**4.** DCD 175–2 concerns the indigent inmate. (Paper No. 23 at Exh. B) According to this DCD, an indigent inmate is one who, upon reception, has less than $3.00 in his/her active and commissary account, and/or who in the previous 30 days has not received pay for an assignment and has not had $3.00 in his/her active and commissary accounts. (*Id.*)