Charles HUTCHINSON,

v.

Bill BELT, et al.

Civil Action No. 95–2300.

United States District Court,
W.D. Louisiana,
Alexandria Division.

Dec. 20, 1996.

Charles Hutchinson, St. Gabriel, LA, pro se.

Tara B. Cochran, Office of Rodney M. Rabalais, Marksville, LA, for defendants.

*RULING*

LITTLE, District Judge.

Before this court is a motion for summary judgment filed by defendants William Belt, Sheriff of Avoyelles Parish, and Richard McGlone, Warden of Avoyelles Bunkie Detention Center ("ABDC"). For the following reasons, defendants' motion is GRANTED.

## I.

Pro se plaintiff Charles Hutchinson filed this suit pursuant to 42 U.S.C. § 1983 on 29 December 1995 when he was a prisoner at Avoyelles Bunkie Detention Center ("ABDC") in Evergreen, Louisiana. Hutchinson amended his complaint on 28 February 1996. The material facts are not in dispute. On 1 December 1995 the defendants implemented a medical co-payment policy (the "Policy") at ABDC. Pursuant to the Policy, ABDC charged inmates $3.00 for a drug prescription, $5.00 for a visit to the nurse, and $7.00 for a visit to the doctor. Amounts billed for medical care were deducted from an inmate's personal account. If an inmate did not have sufficient funds in his account to pay for the medical care, a "negative" was posted against his account until he could satisfy the debt. Under the terms of the Policy, no inmate was to be denied access to medical services due to lack of funds. ABDC suspended the Policy on 14 February 1996. Hutchinson contends, however, that ABDC continued to charge inmates for medical attention after that date.

Hutchinson was transferred to Hunt Correctional Institution on 1 July 1996. The Policy apparently was reinstated at ABDC on 1 August 1996 when the Louisiana Department of Public Safety and Corrections implemented a medical co-payment policy for Louisiana Corrections Department facilities.

Hutchinson complains of an injured back. He contends that the ABDC Policy deterred him from obtaining needed medical care. The Policy, Hutchinson argues, violates his constitutional rights. Defendants move for summary judgment on three separate grounds: (1) Hutchinson lacks standing; (2) the Policy is constitutional; and (3) defendants are entitled to qualified immunity from suit. The motion is unopposed. Because we find that Hutchinson lacks standing to challenge the Policy, we grant defendants' motion.

## II.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In making its determination, the court must draw all justifiable inferences in favor of the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513. Once the moving party has initially shown "that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the non-movant must come forward, after adequate time for discovery, with "specific facts" showing a genuine factual issue for trial. Fed.R.Civ.P. 56(e); *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

▪ Pro se prisoner complaints, moreover, "must be read in a liberal fashion and should not be dismissed unless it appears beyond all doubt that the prisoner could prove no set of facts under which he would be entitled to relief." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir.1989).

## III.

As a threshold matter, we must consider Hutchinson's standing to bring this suit. The requirement that a litigant have standing to institute litigation in federal court emanates from two sources: (1) Article III of the United States Constitution; and (2) court-imposed "prudential considerations." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). If Hutchinson lacks standing, this court does not have authority to consider the merits of the case.

Under Article III, jurisdiction of the federal courts is confined to "cases" and "controversies." U.S. Const. art. III, § 2. The irreducible constitutional minimum of stand-

ing contains three elements. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351, 361 (1992). First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally-protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.' " *Id.* Second, there must be a causal connection between the injury and the aggrieving conduct. The injury has to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* Third, it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision. *Id.*

Prudential considerations which have been incorporated into the standing analysis include "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984).

The party invoking federal jurisdiction carries the burden of establishing the elements for standing. *Defenders of Wildlife,* 504 U.S. at 561, 112 S.Ct. at 2136. In response to a summary judgment motion challenging standing, the plaintiff must set forth by affidavit or other evidence "specific facts," which for purposes of the summary judgment motion will be taken to be true. *Id.;* Fed. R.Civ.P. 56(e). In determining standing, the court does not consider the ultimate merits of the suit. *Hanson v. Veterans Admin.,* 800 F.2d 1381, 1385 (5th Cir.1986).

In this case, defendants argue that Hutchinson lacks standing because the amended complaint contains no allegation that Hutchinson was either charged for medical care or was denied a request for medical services.

■ Hutchinson alleged in his amended complaint that "this inmate already had some money billed against his account," but did not specify the circumstances. He asserted: "It [the Policy] stop me from going to sick call. And if I would have I was going to pay

money to see the nurse or doctor. And I couldn't afford it." Hutchinson has not filed an affidavit or other evidence in opposition to defendants' motion for summary judgment.

We find that Hutchinson lacks standing. Hutchinson has failed to present "specific facts" showing that he has standing to bring this suit. He did not claim that he requested, was denied, or was charged for medical services under the ABDC Policy. Hutchinson's injury is conjectural, not actual or imminent. We accordingly grant defendants' motion for summary judgment.

## IV.

As Hutchinson lacks standing, we do not need to address the merits of his suit or of the qualified immunity claimed by defendants. If Hutchinson possessed standing, however, summary judgment would still be appropriate because there is no genuine dispute about a material fact and the ABDC Policy at issue is constitutionally permitted.

The United States Supreme Court has made it clear that the lower federal courts are not to second-guess the wisdom of prison regulations that do not violate constitutional norms. *Bell v. Wolfish,* 441 U.S. 520, 547–48, 99 S.Ct. 1861, 1878–79, 60 L.Ed.2d 447, 474 (1979). In this case, Hutchinson conceivably presents challenges to the Policy under the Eighth Amendment, Due Process Clause, and Equal Protection Clause of the United States Constitution. We address each possible constitutional argument in turn.

### A.

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. The landmark case interpreting the Eighth Amendment as applied to medical care for prisoners is *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In that case, the Supreme Court found that "[i]t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself. We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed

by the Eighth Amendment." 429 U.S. at 104, 97 S.Ct. at 291.

■ Hutchinson in this case does not allege that defendants were "deliberately indifferent" to his medical needs, only that the medical care to be provided him was not free of charge. As other courts have observed while analyzing prison medical care policies, there is no constitutional right to free medical care. *Shapley v. Nevada Board of State Prison Com'rs,* 766 F.2d 404, 408 (9th Cir. 1985); *Boblett v. Angelone,* 942 F.Supp. 251, 254 (W.D.Va.1996); *Martin v. DeBruyn,* 880 F.Supp. 610, 615 (N.D.Ind.1995); *Johnson v. Dept. of Public Safety & Correctional Services,* 885 F.Supp. 817, 820 (D.Md.1995). Critically, the ABDC Policy at issue in this case provided that no inmate was to be denied access to medical services due to lack of funds. If an inmate is given access to medical services but chooses to apply his resources elsewhere, it is the inmate, and not the prison official, who is indifferent to serious medical needs. *Martin,* 880 F.Supp. at 615. We accordingly find that the Policy did not violate the Eighth Amendment.

### B.

The Due Process Clause of the Fourteenth Amendment presents a second theory upon which Hutchinson conceivably might challenge the Policy, if he had standing. Prisoners do have a property interest in the funds in their prison account, and the court must determine as a matter of law what process is due before an inmate's account can be docked by prison authorities. *Campbell v. Miller,* 787 F.2d 217, 222 (7th Cir.1986).

■ In this case, however, Hutchinson did not allege that any money was deducted from his prison account. And even if he had, the "process due" is truly minimal because under the Policy, deductions are only made when prisoners have purchased something on their own initiative. *See Johnson,* 885 F.Supp. at 821. We also note that the method in which prison officials notified the prisoners of the Policy in this case is similar to the method used by officials in *Myers v. Klevenhagen,* 97 F.3d 91 (5th Cir.1996). In *Myers,* the Fifth Circuit found that prison officials satisfied

due process in the implementation of a medical co-pay policy. Similarly here, we find that Hutchinson's right to due process was not violated by the Policy.

### C.

■ The Equal Protection Clause of the Fourteenth Amendment presents a final theory under which Hutchinson might challenge the Policy. His complaint could be read to allege discrimination in the provision of health care services on the basis of wealth or physical condition. We note initially that Hutchinson does not qualify in a "suspect class" and that there is no "fundamental interest" in medical care for conditions such as those that are subject to the co-pay requirement under the Policy. *Johnson,* 885 F.Supp. at 820–21. The Policy therefore must bear only a "rational relationship to legitimate state purposes." *San Antonio Independent Sch. Dist. v. Rodriguez,* 411 U.S. 1, 40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16 (1973).

We find that the Policy easily passes the rational relationship test. The state has a legitimate interest in the efficient use of prison resources. The co-pay Policy accomplishes this goal by applying negative reinforcement to the human tendency to overuse health care services paid for by a third party. This is the very same, common sense reason that many health care systems in this country have implemented co-pay policies. Co-pay policies are designed to encourage universal, but efficient, access to medical care.

We accordingly conclude that the Policy did not violate equal protection. Even if Hutchinson had standing, which we find he does not, the Policy would survive Constitutional challenge.

### V.

As Hutchinson lacks standing to pursue this lawsuit, defendants' motion is GRANTED and the case is DISMISSED.