UNITED STATES COURT OF APPEALS
For the Fifth Circuit

_____

No. 99-40335

_____

ROGER DUDLEY,

Plaintiff-Appellee-Cross-Appellant,

VERSUS

DAN ANGEL, Etc.; Et Al;

Defendants,

DAN ANGEL, President of Stephen F. Austin State University; BAKER
PATTILLO, Vice President for University Affairs; STEVE WESTBROOK,
Director of Student Activities; BEVERLY FARMER, Associate
Director of Student Activities,

Defendants-Appellants-Cross-Appellees.

_____

Appeals from the United States District
Court for the Eastern District of Texas

_____

April 25, 2000

Before POLITZ and DAVIS, Circuit Judges, and RESTANI,[*] Judge:

RESTANI, Judge:

This is an interlocutory appeal from an order of the
district court denying summary judgment to individual state
employees based on qualified immunity from liability under 42
U.S.C.A. § 1983 (1999).  The court has jurisdiction to determine
whether the disputed facts are material to the claim of qualified

_____

[*] Judge of the United States Court of International Trade,
sitting by designation.

immunity and whether the district court otherwise applied the proper legal standards. Gerhart v. Hayes, 201 F.3d 646, 648-49 (5th Cir. 2000); Meyer v. Austin Indep. Sch. Dist., 161 F.3d 271, 273-274 (5th Cir. 1998), cert. denied,119 S. Ct. 1806 (1999).

**FACTS**

Plaintiff Roger Dudley, an employee of the Stephen F. Austin State University, sued University President Dr. Dan Angel, Vice-President for University Affairs Dr. Baker Patillo, Director of Student Activities Steve Westbrook, and Associate Director of Student Activities Beverly Farmer, each in his or her individual capacity.[1] Dudley alleges his civil rights were violated when he was dismissed from his position as Assistant Director of Student Affairs upon assuming office as Constable of Nacogdoches County, Texas.

The University requires that employees obtain permission for outside employment. After several years of approvals, in 1989 the University Police Department denied Dudley permission for outside employment in deer lease security, allegedly because of a shooting incident some years earlier. Numerous University

---

[1] Suit against the University, an admitted arm of the State of Texas, was dismissed on Eleventh Amendment grounds; pendant state law claims were dismissed without prejudice.
Dudley cross-appealed the dismissal of his claims against the University and his state law claims. Dudley concedes, however, that this court lacks appellate jurisdiction to hear those claims because the district court did not enter a final judgment. The court, therefore, need not reach these issues.

employees have received permission for outside part-time employment, for as much as 120 hours per month. [See Record Excerpts Tab 4i]  There is no evidence that any employee has received permission for full-time outside employment.[2]

Until 1992, Dudley was employed as a University police officer.  While off-duty he shot at the wheels of a car containing individuals he alleged were prowlers.  He was charged with a violation of University policy.  Dudley disputed the charge and the University settled the matter by transferring him to the Student Affairs office.

Upon his election as Constable in December, 1996, Dudley again sought outside employment permission from the University.  He noted that the Constable position largely involved serving civil papers, involved little or no law enforcement work, and that the hours were flexible. [See Record Excerpts Tab 4d]  The University contacted the county personnel office and was advised that the position of Constable was designated "full-time."  The position pays $25,000 per year.  Dudley did not cite evidence that this is not in the range of full-time salaries for some positions in the county.  Nor does it appear disputed that the position is actually designated "full-time," although Dudley alleges the position only requires 3-4 hours of work per week.

Dudley's request for outside employment was denied.  Dudley

---

[2]  Dudley's counsel, at oral argument, admitted that no one had been approved for outside employment at 160 hours per month.

alleges that in this regard he was treated differently from the manner in which other employees were treated, and that he was fired because he ran for Constable as a Republican.[3]  (Dudley previously supported some Democrats).  None of the defendants is alleged to be a Democrat or a member of any other party.  The record reveals that defendants Angel and Farmer may have some ties to the Republican party.

## DISCUSSION

"A state official exercising discretionary authority whose conduct deprives another of a right secured by federal constitutional or statutory law is nonetheless shielded from personal liability for damages under section 1983 by the doctrine of qualified immunity, unless at the time and under the circumstances of the challenged conduct all reasonable officials would have realized that it was proscribed by the federal law on which the suit is founded."  Pierce v. Smith, 117 F.3d 866, 871 (5th Cir. 1997) (citing Anderson v. Creighton, 483 U.S. 635, 637-642 (1987)). Neither party disputes that the actions and

---

[3]  Another University employee, David Campbell, ran unsuccessfully for County Commissioner as a Democrat.  During the campaigns of both Campbell and Dudley the University requested an opinion of the Attorney General as to the validity of its outside employment policy.  The letter expresses the University counsel's belief that a Texas statute prohibited the University from firing Campbell (a plausible interpretation, but one with which the Attorney General disagreed) and that she believed Dudley was not so protected. [Record Excerpts Tab 4h]  The Attorney General upheld the general applicability of the outside employment policy to both employees. [See Atty Gen. letter, Record on Appeal, Vol. 3 at 64]

4

decisions for which Dudley is suing these defendants were discretionary. Therefore, Dudley must overcome the defendants' claims of qualified immunity, by first showing a violation of clearly established federal rights. Sorenson v. Ferrie, 134 F.3d 325, 330 (5th Cir. 1998); Pierce, 117 F.3d at 872. Only if plaintiff has satisfied this burden, need we consider the second requirement for overcoming defendants' claim of qualified immunity, that is, whether the defendants' conduct was "objectively unreasonable." Cronn v. Buffington, 150 F.3d 538, 541 (5th Cir. 1998); Texas ex rel. Bd. of Regents of Univ. of Tex. Sys. v. Walker, 142 F.3d 813, 818 (5th Cir. 1998), cert. denied, 119 S.Ct. 865 (1999).

The first step of the qualified immunity analysis is subdivided into three questions: (1) whether a constitutional violation is alleged; (2) whether the law regarding the alleged violation was clearly established at the time of the alleged violation; and (3) whether the record shows that the violation occurred. Kerr v. Lyford, 171 F.3d 330, 339 (5th Cir. 1999) (citing Rich v. Dollar, 841 F.2d 1558, 1563 (11th Cir. 1988)).

The district court accepted that plaintiff was alleging violation of the right to affiliate with the party of one's choice and that such rights are clearly established. The court focused on the reasonableness of the actions of the University officials for both determining whether the record could support a finding that Dudley's rights were violated, and for determining

5

whether the officials' conduct was objectively unreasonable.  The court found, first, that the officials were incorrect in finding the position to be full-time in the face of Dudley's description of the position and, second, that they acted unreasonably in not looking behind the "full-time" designation.  The court further found that the letter to the Attorney General requesting an opinion of the University's outside employment policy demonstrated: (1) that the officials' proffered reasons to terminate Dudley were pretextual; (2) that the officials wanted to treat the Democratic candidate, Campbell, differently from Dudley, the Republican candidate; and (3) that the University officials might harbor resentments toward party switchers. [See District Ct. Memorandum Order and Opinion, Record Excerpts Tab 3, at 9-10 & n. 2.]

The district court erred.  Dudley cannot satisfy the first part of the two-part test for overcoming qualified immunity.  The Supreme Court has consistently held that "the First Amendment forbids government officials to discharge or threaten to discharge public employees solely for not being supporters of the political party in power . . ."  Brady v. Fort Bend County, 145 F.3d 691, 702 (5th Cir. 1998) (quoting Rutan v. Republican Party of Ill., 497 U.S. 62, 64 (1990)), cert. denied, 525 U.S. 1105 (1999).  If Dudley's claim rests on political affiliation discrimination, as the district court believed, he must at least put forth evidence from which a trier of fact could conclude that

6

these defendants discriminated against him because he ran as a Republican.[4]  See Crawford-El v. Britton, 523 U.S. 574, 588 (1998) ("an essential element of some constitutional claims is a charge that the defendant's conduct was improperly motivated"). In a First Amendment violation case, such as this, where wrongful motive is an element of the violation, the district court must not let the objectively reasonable test of the second step overcome the requirements of the first step.  See id. at 588 (plaintiff bears "initial burden of proving a constitutional violation").  Dudley did not make out a case of political affiliation discrimination which could survive summary judgment because no evidence of a constitutionally infirm motive was presented.[5]  The district court's attempt to fill in the gap with a theory of animus toward party switchers finds no basis in this record.

Disposition of the political affiliation claim leaves only Dudley's claim that he was denied the equal protection of the law, in that he was treated differently from other State

---

[4]  The letter to the Attorney General on which the district court relied is of no help to Dudley.  Distinctions were drawn among Campbell and Dudley, who were seeking different positions, for legal reasons which were not irrational.  There is no evidence that the distinctions were drawn because Campbell was a Democrat and Dudley a Republican.

[5]  Whether the University wished Dudley to leave its employment because of his record as its employee might present a disputed fact, but it is not material to a claim of a constitutionally infirm motive.

7

University employees. "The Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.'" Brennan v. Stewart, 834 F.2d 1248, 1257 (5th Cir. 1988) (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). Dudley does not allege he is a member of a suspect class. Therefore, under equal protection analysis, rational basis scrutiny applies. See Johnson v. Rodriquez, 110 F.3d 299, 306 (5th Cir. 1997).

First, the record reveals that no other University employee received permission to assume an outside position designated full-time by the outside employer. Thus, there is no similarly situated person who was treated differently. Compare Gosney v. Sonora Indep. Sch. Dist., 603 F.2d 522, 527 (5th Cir. 1979) (holding school district violated administrator's fourteenth amendment right to equal protection by denying him employment because others, similarly situated, were not denied employment). Second, the University's treatment of Dudley had a rational basis. His outside employment was designated to be full-time. It is rational to require University employees to be limited to one full-time job.

Further, assuming that the second step of qualified immunity analysis may be reached, it cannot be said that defendants' actions were objectively unreasonable based on the undisputed facts. To require the University to look behind the county's classification system or to accept Dudley's description of the

8

position in the face of the county's declaration, as the district court did, is to place on University officials a burden they need not meet in order to be qualifiedly immune from suit.[6]  The officials need not be correct in their assessments; they need only be reasonable in making them.

Public officials must be free to make unpleasant or difficult discretionary decisions free from the threat of protracted litigation.  Insubstantial litigation must be quickly terminated.  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 814 (1982) (citations omitted).  Requiring a showing of a clearly established violation of law and objectively unreasonable decision-making serves this function.  <u>See id.</u> at 818 ("Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many unsubstantiated claims on summary judgment") (footnote omitted).  Dudley has not met this burden.

We conclude that the district court erred in denying defendants' summary judgment based on qualified immunity.  The decision below is reversed and we remand this matter to the district court for disposition of the action.

---

[6]  Dudley's description is difficult to square with both campaign information about the increased responsibilities of the position and the salary provided.