Perry Richard BREAKIRON,
ID # 09528, Plaintiff,

v.

Curtis NEAL, et al., Defendants.

No. 3:00–CV–2155–H.

United States District Court,
N.D. Texas,
Dallas Division.

May 8, 2001.

Perry Richard Breakiron, Greenville, TX, pro se.

### ORDER

SANDERS, District Judge.

After reviewing the objections to the Findings, Conclusions, and Recommendation of the United States Magistrate Judge and conducting a *de novo* review of those parts of the Findings and Conclusions to which objections have been made, I am of the opinion that the Findings and Conclusions of the Magistrate Judge are correct and they are accepted as the Findings and Conclusions of the Court.

### FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

BOYLE, United States Magistrate Judge.

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge, as evidenced by her signature hereto, are as follows:

### FINDINGS AND CONCLUSIONS

#### I. Background

*Nature of the Case:* This is a civil rights complaint pursuant to 42 U.S.C. § 1983.

*Parties:* Plaintiff is an inmate incarcerated in the Hunt County Jail (the jail). He names Jail Supervisor Curtis Neal (Neal); Transport Officer Mary Bruner (Bruner);[1] and Medical Officer Lynn Brannon (Brannon)[2] as defendants in this action. No process has been issued in this case.

*Statement of the Case:* In his complaint, plaintiff alleges that he was injured on September 15, 2000, when a metal door closed on him at the jail. (**Compl. at 4.**) He seeks damages for pain, anguish, and mental stress. (*Id.*) On November 17, 2000, the Court sent a Magistrate Judge's Questionnaire to flesh out his complaint. On November 27, 2000, plaintiff answered questions two through five. For some unknown reason, question one was not sent. Consequently, on December 1, 2000, the Court sent a Second Magistrate Judge's Questionnaire that contained the omitted question. On December 7, 2000, plaintiff answered that question. For ease of reference, the Court will cite to the answers by their number without referring to the specific questionnaire that contained the question, *i.e.* Answer 1, Answer 2, etc.

---

1. Plaintiff amended the spelling of this defendant's name in an attachment to his answers to a Second Magistrate Judge's Questionnaire.

2. In a document filed March 12, 2001, plaintiff requested that the Court correct the spelling of this defendant's name. The Court thus uses the spelling as corrected in the document filed March 12, 2001.

Plaintiff suffered significant physical injuries, when the metal door closed on him at the Hunt County Jail. (**Answer 1.**) He seeks damages for the door closing on him and for an alleged intentional or deliberate deprivation of medical care. (**Answer 2.**) He asserts that Neal and Bruner deprived him of medical care for ninety minutes, as they tried to discourage the seeking of medical treatment. (*Id.*) He seeks no damages for any other deprivation of medical care.[3] (*See id.*) He claims Neal was responsible for the door closing on him, because Neal failed to maintain proper jail procedure. (*Id.*) He contends Neal violated his civil rights by such failure and "by acting like it was no big deal once I notified him I had been physically hurt by this door closing on me and taking his time to actually act by taking me to the hospital to seek medical help." (**Answer 3.**) He contends Bruner violated his civil rights by delaying medical treatment by ninety minutes, while she tried to "bribe" him to forego treatment and while she shook down his cell. (**Answer 4.**) He contends Brannon violated his civil rights by dispensing his medication without a medical license and by charging "for medical treatment I received from jailor neglect." (**Answer 5.**) He further suggests that she violated his civil rights by misplacing medical paperwork. (**Compl. at 3; Answer 5.**)

## II. Screening for Frivolity

The Court has permitted plaintiff to proceed *in forma pauperis*. His complaint is thus subject to *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2). As a prisoner seeking redress from an officer or employee of a governmental entity, plaintiff's complaint is also subject to preliminary screening pursuant to 28 U.S.C. § 1915A

regardless of whether he proceeds *in forma pauperis*. *See Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir.1998), *cert. denied*, 527 U.S. 1041, 119 S.Ct. 2405, 144 L.Ed.2d 803 (1999). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal, if the Court finds the complaint "frivolous" or if it "fails to state a claim upon which relief may be granted." A claim is frivolous, if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A complaint fails to state a claim upon which relief may be granted when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Smith v. Winter*, 782 F.2d 508, 511–12 (5th Cir.1986); *Henrise v. Horvath*, 94 F.Supp.2d 768, 769 (N.D.Tex.2000).

Plaintiff brings his claim under 42 U.S.C. § 1983. That statute "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.*

### A. *Negligence*

■ To the extent plaintiff seeks damages for the door closing on him or for misplaced medical paperwork, his complaint sounds in negligence. "Section 1983 imposes liability for violation of rights protected by the Constitution, [however,] not for violations of duties of care arising out

---

3. Although plaintiff suggests that someone denied him the use of prescribed crutches, (**Answer 1**), he seeks no damages for such denial and has identified no person responsible for it

(*see* **Answer 2**). Accordingly, such a claim fails. The Court need not address suggestions of constitutional deprivations made merely in passing without support.

of [state] tort law." *Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Mere negligence is not actionable under § 1983. *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (**concluding that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property"**); *Davidson v. Cannon,* 474 U.S. 344, 347–48, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) (**stating that "[r]espondents' lack of due care ... simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent"**); *Lemoine v. New Horizons Ranch & Ctr., Inc.,* 174 F.3d 629, 635 (5th Cir. 1999) (**stating that "negligence on the part of state officials does not suffice to make out any due process violation under the Fourteenth Amendment"**). Accordingly, plaintiff's claims of negligence fail.

### B. *Denial of Medical Care*

■ Plaintiff suggests that defendants Neal and Bruner denied him medical care by delaying such care by ninety minutes. (**Answer 2.**) In *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the United States Supreme Court held that deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment prohibition against cruel and unusual punishment. 429 U.S. at 106. It concluded that

> deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of

how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983. *Id.* at 104–05 (citation and footnotes omitted); *see also, Harris v. Hegmann,* 198 F.3d 153, 159 (5th Cir.1999) (citing *Estelle* for same proposition). To establish an Eighth Amendment claim for denial of medical care, the inmate must show deliberate indifference to "serious" medical needs, "[b]ecause society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Constitutionally adequate care does not, however, ensure that an inmate will agree with every treatment decision. *Estelle,* 429 U.S. at 107–08.

To succeed on his claims of denial of medical care, petitioner must show (1) deliberate indifference (2) to a serious medical need. Plaintiff undoubtedly had a serious medical need. The question is thus whether he has shown deliberate indifference to that need. He alleges that defendants Neal and Bruner were deliberately indifferent when they delayed medical treatment by ninety minutes. He has not shown, however, that such delay constitutes deliberate indifference. The record reflects that, on the day of his injury Neal transported him to the emergency room of the Presbyterian Hospital of Greenville, where doctors prescribed pain medication and crutches. (**Answers 1 and 4.**) As directed by the emergency room physician, plaintiff visited an orthopedic surgeon the next day who prescribed additional pain medication and a leg immobilizer and directed plaintiff to stay off his leg. (**Answer 1.**) As ordered by the orthopedic surgeon, plaintiff had a follow-up appointment on October 26, 2000. (*Id.*) At that appointment the doctor discontinued the leg immobilizer and ordered physical therapy. (*Id.*) Plaintiff's leg and knee were healing. (**Answers 1 and 5.**)

■ The ninety-minute delay does not appear to violate civilized standards or concepts of humanity and decency. *See Estelle v. Gamble,* 429 U.S. 97, 102–03, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (**stating that the Eighth Amendment prohibits any punishment that violates civilized standards and concepts of humanity and decency**). In addition, the alleged deprivation must be objectively "sufficiently serious." *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Under the facts of this case, the ninety-minute delay does not appear sufficiently serious under this objective standard.

Although plaintiff complains about the ninety-minute delay in the receipt of treatment, he does not indicate that his physical condition during that time warranted prompter medical treatment or that it wholly debilitated him. He does not allege, furthermore, that the delay exasperated or aggravated his injuries or otherwise damaged him. All of his injuries appear solely attributed to the door closing on him, not on the ninety minutes it took to transport him to the emergency room. His injuries do not appear to be of a type that require more prompt medical treatment.

■ Under the "deliberate indifference" standard, moreover, a prison official is not liable for the denial of medical treatment "unless the official knows of and disregards an excessive risk to inmate health or safety". *Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir.1999) (quoting *Estelle,* 429 U.S. at 104). Plaintiff has not shown that anyone disregarded a known excessive risk to his health by delaying medical treatment by ninety minutes.

For these reasons, the Court finds no deliberate indifference from the alleged ninety-minute delay. Plaintiff's claimed denial of medical care is thus frivolous and does not survive summary dismissal.

## C. *Charging for Medical Treatment*

Plaintiff suggests that defendant Brannon violated his civil rights by deducting payments from his prison trust account for medical services rendered. (**Answer 5.**) He does not specify the constitutional provision that such deductions violate. The claim could conceivably arise from the Cruel and Unusual Punishment Clause of the Eighth Amendment, as well as the Due Process and Equal Protection Clauses of the Fourteenth Amendment. *See, e.g., Reynolds v. Wagner,* 128 F.3d 166, 172–82 (3d Cir.1997); *Hutchinson v. Belt,* 957 F.Supp. 97, 99–100 (W.D.La.1996).

■ Prisoners have a property interest in the funds in their prison accounts. *Campbell v. Miller,* 787 F.2d 217, 222 (7th Cir.1986). Although plaintiff complains that defendant Brannon deducted payments from his inmate trust account for medical treatment, he makes no allegation that Brannon or anyone else deprived him of his funds without due process of law. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). In the absence of an allegation that the deductions occurred without due process of law, plaintiff cannot succeed on a procedural due process claim.

■ The Due Process Clause of the Fourteenth Amendment also "contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Id.* (quoting *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). Although its opinion does not specifically mention substantive due process,

the United States District Court for the Southern District of Texas has addressed the propriety of collecting payment for medical care in the prison context. *See Bihms v. Klevenhagen,* 928 F.Supp. 717, 718 (S.D.Tex.1996). *Bihms* provides the following relevant discussion:

> If the inmate can pay for his medical care, then the state may require reimbursement. Texas has a law that adopts that policy. Tex.Code Crim. Pro. Ann. art. 104.002(d) (Supp.1996). No right described or adumbrated in the Constitution is implicated by a decision of the state to seek compensation for its actual, reasonable costs in maintaining the prisoner.

> If the prisoner cannot pay, he must be maintained at state expense; it cannot deny minimal medical care to poor inmates. The prisoner makes no claim that he was denied care. Rather, he simply objects to being deprived of his liberty without the reverse "benefit" of cost-free maintenance from the state. As he was obliged to pay court costs, he may be obliged to pay his medical costs. Texas imprisoned him; it did not adopt him.

928 F.Supp. at 718 (case citations omitted). Deducting payments from a prisoner's inmate trust account for medical services rendered does not appear to be an arbitrary or wrongful government action. States may decide who should pay for the medical care of inmates. *City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244–45, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983). To the extent plaintiff claims the deductions by Brannon violate his substantive due process rights, the claim is frivolous.

■ A claim that the deductions somehow violate the Equal Protection Clause of the Fourteenth Amendment likewise fails. Nothing before the Court suggests an Equal Protection violation. Plaintiff, furthermore, has not alleged that he is a member of a suspect class. The Court would thus apply a "rational basis scrutiny" to any Equal Protection challenge by plaintiff. *See Dudley v. Angel,* 209 F.3d 460, 463 (5th Cir.2000). The Western District of Louisiana has found the Louisiana co-payment policy constitutional under the rational basis test. *See Hutchinson v. Belt,* 957 F.Supp. 97, 100 (W.D.La.1996).

> The state has a legitimate interest in the efficient use of prison resources. The co-pay Policy accomplishes this goal by applying negative reinforcement to the human tendency to overuse health care services paid for by a third party. This is the very same, common sense reason that many health care systems in this country have implemented co-pay policies. Co-pay policies are designed to encourage universal, but efficient, access to medical care.

*Id.* The same rationale applies to the Texas co-payment policy. Consequently, to the extent plaintiff makes a claim under the Equal Protection Clause, the Court finds it frivolous.

■ Under the facts presented, the Cruel and Unusual Punishment Clause of the Eighth Amendment appears to be the most likely provision upon which plaintiff's claim rests. That Amendment, nevertheless, provides no basis for a claim against Brannon. Deducting payments from a prison trust account does not of itself violate the Eighth Amendment's prohibition against cruel and unusual punishment. "There is . . . no general constitutional right to free health care." *Reynolds v. Wagner,* 128 F.3d 166, 174 (3d Cir.1997); *see also, City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244–45 & n. 7, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) **(recognizing that, although the state must provide inmates with basic medical care, the question of who must ulti-**

mately pay for such services is a matter of state law). Charging inmates for medical care, furthermore, is not *per se* unconstitutional. *Reynolds,* 128 F.3d at 174; *Shapley v. Nevada Bd. of State Prison Comm'rs,* 766 F.2d 404, 408 (9th Cir.1984).

To succeed on a claim of cruel and unusual punishment against Brannon, plaintiff must demonstrate that she was deliberately indifferent to his medical needs. Deducting payments from his inmate trust account does not of itself exhibit deliberate indifference by Brannon. Plaintiff, furthermore, has alleged no facts that reveal how the payments affected him. He has not alleged, moreover, that he was denied medical treatment because of any inability to pay for the medical treatment. He has not shown a violation of the Eighth Amendment.

### D. *Dispensing Medicine Without Medical License*

██ Plaintiff suggests that defendant Brannon violated his civil rights by dispensing medicine without a medical license. (*See* **Answer 5.**) This claim is not cognizable under 42 U.S.C. § 1983. The statute only provides a cause of action for deprivations "secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw,* 512 U.S. 107, 132, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994). Prisoners have no constitutional right to have their medication dispensed by a licensed medical practitioner. Federal law, furthermore, does not require that medication be dispensed solely by licensed practitioners. Officer Brannon violated no constitutional provision or federal statute when she dispensed medicine without a license.

### RECOMMENDATION

For the foregoing reasons, it is recommended that the District Court **DISMISS** plaintiff's complaint as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

April 17, 2001.